THE STATE OF CONNECTICUT *vs.* JOSEPH. PECCIULIS,
ALIAS JOSEPH MITCHELL ET AL.

Third Judicial District, New Haven, January Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Upon a prosecution for murder, the trial judge, after having explained
the principles of law applicable to the presumption of innocence
and to the question of reasonable doubt, stated in a clear and con-
cise form the claims of one of the accused on the subject of an *alibi*,
and specifically instructed the jury to consider the testimony in
relation to that defense, and that if they found it sufficient to raise
a. reasonable doubt in their minds as to the presence of that de-
fendant at the place of the homicide, or as to his participation in
the crime, to give him the benefit of the doubt and to acquit him.
*Held* that these instructions were as full and explicit as the case
required.

An assignment of error which merely recites the claims of the State,
presents no question of law for the consideration of this court.

Where a homicide is accompanied with circumstances of atrocity, bar-
barity and cruelty, or such as evidence a wicked and depraved
spirit, malice may be presumed.

Having instructed the jury that the guilt or innocence of each of two de-
fendants must be separately considered and determined, it is not
necessary to repeat that proposition in treating all the legal ques-
tions applicable to the evidence and claims of the parties.

Evidence having been admitted tending to show that the two defend-
ants had agreed upon a plan to kill the deceased or to do him great
bodily harm, and that both were present and took part in the kill-
ing pursuant to their agreement, the trial court may very properly
instruct the jury as to the law of criminal conspiracy.

Evidence given by one of two defendants in his own behalf, against his
associate, does not necessarily and as matter of law impose a duty
upon the trial judge to caution the jury about accepting such testi-
mony unless corroborated.  It is the character and interest of the
witness as shown upon the trial, and not merely his participation
in the crime charged, that must guide the discretion of the judge in
commenting on his credibility.  And where such testimony is cor-
roborated, and no request made for any instruction as to its cred-
ibility, an omission to give it is not error on the part of the trial
court.

Counsel for one defendant has no right to make admissions prejudicial
to another.

An allusion by the trial judge to such an admission in his charge, while

stating a claim of the State, although not strictly proper, is harmless, where the evidence before the jury enables them to readily determine whether the claim is well founded or not, and especially if they are specifically instructed that they must not rely on the recollection of the presiding judge as to what the evidence and facts in the case really are, but must settle that for themselves.

Where the evidence and claims of the State are more voluminous than those of the defense, their presentation and explanation in the charge may very properly consume more time than is given to the evidence and claims of the defense; although both sides should be fully and fairly stated.

If the charge as a whole is unobjectionable, error cannot be predicated upon detached sentences or clauses.

The order in which testimony shall be received rests in the discretion of the trial court; and therefore the exclusion of a question for the time being, without any ruling as to its admissibility thereafter, is not error.

It is within the discretion of the trial court to exclude questions on cross-examination which are not pertinent to the examination in chief.

A witness for the State testified that he had taken the statement of the decedent in the hospital, whereupon he was cross-examined as to what took place shortly thereafter when the accused was brought in and charged by the decedent with the homicide. *Held* that these questions were not properly cross-examination, and that inasmuch as the witness was permitted to describe fully the conduct and manner of the accused on that occasion, it was well within the discretion of the trial court to exclude further questions which were naturally calculated to call out merely a repetition of the same testimony.

The refusal to strike out material and relevant testimony, although not responsive to the question, is a matter resting in the discretion of the trial court.

Argued January 17th—decided March 8th, 1911.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven County and tried to the jury before *Williams, J.;* verdict and judgment of guilty of murder in the second degree as to Pecciulis, and of manslaughter as to Sophie Kritchman, from which the former appealed. *No error.*

*William B. Stoddard* and *Jacob P. Goodhart,* for the appellant (the accused Pecciulis).

*John P. Kellogg*, Assistant State's Attorney, for the appellee (the State).

RORABACK, J.   It appears that the following facts were sworn to by witnesses for the State and admitted by the defendants:   About noon on the 18th day of September, 1909, Bronislow Kulvinskas was found lying upon the ground in a secluded place near Waterbury, covered with blood, in a dying condition from the effects of twelve bullet wounds in different parts of his body, and also with a deep gash or cut in the neck extending nearly from ear to ear.   Kulvinskas was removed to the Waterbury hospital where he died about half past eight in the evening from a shock and hemorrhage occasioned by the bullet wounds and the cut about the throat.

The State offered evidence to prove, and claimed to have proved, the following facts: In consequence of the attentions of Kulvinskas to the defendant Kritchman, Mitchell became very jealous of him and threatened to take his life.   On the evening of Thursday, September 16th, because of their jealousy over Sophie Kritchman, Kulvinskas and Mitchell became engaged in a violent quarrel, exchanging blows, in which Mitchell threatened to kill him.   After the quarrel it was agreed between the accused Mitchell and Sophie Kritchman that the defendant Sophie should induce Kulvinskas to go with her to the secluded place where Kulvinskas afterward was found, and that Mitchell would meet them there and take the life of Kulvinskas, or do him some serious bodily harm.   The defendant Sophie, in pursuance of this arrangement, induced Kulvinskas to go with her to this place, where Mitchell appeared, and subsequently, upon the 17th and 18th of September, both of the defendants acted together in making no less than three murderous assaults upon

Kulvinskas with a revolver and a razor; the first shot caused a temporary paralysis of his lower limbs, so that he was unable to offer any resistance, obtain assistance, or leave the place where he was first wounded; and that some of the wounds made upon his body were made by Mitchell, and others by the defendant Sophie.

Sophie Kritchman in her defense offered evidence tending to prove that upon Friday afternoon when she was sitting by the side of Kulvinskas in this secluded place, Mitchell appeared and fired his revolver several times at him, some of the shots taking effect; that on the following day, Saturday, although she was near at hand when he was again shot and wounded, she took no part in the shooting, and she had no knowledge of the cutting of his throat; and that her conduct subsequent to the first shooting was induced by threats made by Mitchell to take her life.

Mitchell claimed to have proven that at no time on Friday, September 17th, or Saturday, September 18th, 1909, was he within two miles of the place where the shooting occurred; and that he had no knowledge of any contemplated injury to Kulvinskas, and was in no way responsible for his death.

Four of the assignments of error complain of the charge because it disregarded Mitchell's claims and defense as to an *alibi*. The instructions to the jury stated Mitchell's claims upon this subject in a clear and concise manner. The principles of law applicable to the presumption of innocence, and to the question of reasonable doubt, were fully and carefully explained, and the judge also specifically instructed the jury as follows: "You will consider this testimony upon this subject called an *alibi*, this defense called an *alibi*, and you will remember what I have already said to you: it is not incumbent upon either of the accused to prove his or her innocence. You are to consider all of the

testimony in support of any other claim, and without prejudice as to the claim in support of which the testimony is offered. If the testimony as to the *alibi* is sufficient to raise a reasonable doubt in your minds as to his presence down there on either day, or as to his participation in this murder, if it were a murder, of course he must have the benefit of it and be discharged."

The instructions upon this subject were as full and explicit as necessary.

The fifth assignment presents no question for our consideration. It is simply a statement of what the State and the accused Sophie Kritchman offered evidence to prove, and claimed to have proven. An assignment of error should distinctly state the special errors complained of. General Statutes, § 798.

The sixth, seventh and eighth reasons of appeal object to the charge upon the question of malice, especially to that portion of it where the court, in explaining to the jury the meaning and application of implied malice, said: "As one legal writer puts it, malice includes all those states of the mind in which homicide is committed without legal justification, extenuation or excuse. It is an evil design in general, where the circumstances manifest a wicked, depraved, wanton and malignant spirit. If an act which produces death is attended by such circumstances as are the ordinary symptoms of a wicked and depraved spirit, malice may be presumed. So malice may be presumed or implied from circumstances of atrocity, barbarity and cruelty attending the killing, or from the unlawful use of a deadly weapon. In general, it may be said that where an unlawful homicide is shown to have been committed by an accused, and no circumstances of mitigation, extenuation or excuse appear, malice in the slayer will be presumed. An illustration or two will, perhaps, aid you in the arrival at a clear understanding of what the

law means by malice.  Take the case of a man who hates another and desires to be revenged upon him, and for that reason singles him out and intentionally and unlawfully kills him, the assailant is said to kill his victim of his malice.  The hatred and intention to unlawfully kill constitutes malice.  In such a case, the legal and popular meaning of the word malice substantially coincide."  It was insisted in argument that "this charge holds up to the jury this cruel and inhuman murder as evidence of malice against Mitchell.  The court draws no distinction between Mitchell and Sophie Kritchman in this case.  He doesn't tell the jury that they cannot imply malice against Mitchell if all these cruel acts were without Mitchell's knowledge or consent or co-operation: and under that charge the jury would have the right to presume malice against Mitchell even though he had nothing to do with the killing."

The court having stated repeatedly to the jury that the guilt of each of the defendants must be considered separately by them, it was not necessary to repeat that proposition in discussing all the legal questions applicable to the evidence and claims of the parties.  It appears from the record that it was conceded that there was no question about the manner in which the murder was committed.  Counsel for the defendant in oral argument and in their brief, stated that "beyond all question it was the most cruel, brutal, and inhuman murder conceivable, involving torture and a lingering death, and no reasonable provocation for it."  The finding shows that the State claimed and offered evidence to prove that Mitchell was present and participated in the killing, and was only absent at the time when it is claimed by the State that Sophie Kritchman cut the throat of the deceased with a razor.  It was also claimed that the evidence showed that Mitchell was present when the first shots were fired upon Friday, and

that he came back upon Saturday morning, and, finding that Kulvinskas was still alive, he then fired an additional shot into his head as he lay helpless and dying on the ground.

There is no foundation for the claim that the charge of the court as to a criminal conspiracy was erroneous because there was no evidence whatever upon this subject. It appears that the State offered evidence to prove that the two accused persons agreed together, on Thursday evening preceding the first assault upon Kulvinskas, that Sophie should induce him to take a walk with her upon an old road, and that Mitchell should follow her, and either take the life of Kulvinskas or do him great bodily harm. The State also claimed, and the jury has found, that this arrangement was fully consummated.

The defendant complains because the court below omitted in its charge the caution usually given to a jury when the testimony of an accomplice is offered to establish the guilt of an associate. Although it appears that the State claimed that Sophie Kritchman and Joseph Mitchell acted together in committing the alleged murder, yet it does not necessarily follow that the failure of the judge to give special instruction upon this subject is a ground for a new trial. This court has said that the practice of instructing a jury that it is unsafe to believe the uncorroborated testimony of accomplices, arose from conditions which in great part have ceased to exist; and it is no longer a rule of law, if indeed it ever was, that such an instruction must be given to the jury in every criminal case in which an accomplice testifies. It is the character and interest of the witness as shown upon the trial, and not merely his participation in the crime charged, that must determine the discretion of the judge in commenting on his credibility. If, however, the situation demands it,

the jury should be cautioned; and it may be possible that a failure to perform this duty would furnish ground for a new trial. *State* v. *Carey*, 76 Conn. 342, 349, 350, 56 Atl. 632. There is nothing in the record before us that justifies the inference that the State offered Sophie Kritchman as a witness to prove the guilt of Mitchell. On the contrary, it is fair to assume from the finding that her testimony was given when she was speaking as a witness in her own defense. It also appears that Joseph Mitchell was not convicted upon the uncorroborated testimony of one who was claimed to be associated with him in committing the crime now under consideration. The dying declarations and statements of Bronislow Kulvinskas, the deceased, admitted in evidence, showed that he stated that "Sophie Kritchman and Joe Mitchell kill me. . . . Joe Mitchell was there. . . . Joe Mitchell drew up near to me from behind and put a revolver to my head and fired." These and other facts which the State claimed were proven, clearly demonstrate that the State was not attempting to secure the conviction of Mitchell upon the uncorroborated testimony of Sophie Kritchman. Under these circumstances it was not error for the court, without a request from the defendant, to omit an instruction concerning corroboration.

In speaking of the motive which Mitchell may have had for killing Kulvinskas, the presiding judge said: "The State says there was a motive for Mitchell, a motive why Mitchell should desire the removal by death of Kulvinskas, and the State points you to the relations, and confessed relations, I say confessed as indicated by the letters between them. They say the relations are indicated by the frequency of his visits to her, and his attentions upon her. Counsel for Sophie Kritchman united with the State in saying to you that the relations between her and Mitchell were of the

closest and most intimate character, as indicated by the letters."

The last sentence of the remarks of the court just noticed might well have been omitted. Counsel for Sophie Kritchman had no right to make any admissions which might militate against Mitchell. But the court was simply making a statement of a claim apparently supported by the evidence, and which the State was clearly entitled to urge in argument. The jury could not have been misled by it, as they could have easily ascertained whether the claim was without foundation by an examination of the letters which were in evidence. Moreover, the jury were instructed in another portion of the charge: "As you listen to what I do say in regard to the facts, evidence or claims of counsel, you should keep in mind, and later during your deliberations remember, that I am not assuming to determine for you in any sense what the facts really are or what the evidence is. . . . In what I say on the evidence or claims of counsel I shall speak from my recollection and understanding of the same. But you are not to assume the accuracy of my recollection and understanding. . . . of what the evidence is or claims of counsel are, to be superior or in any way to supersede the accuracy of your own recollection and understanding of the evidence and such claims." Under these circumstances no reversible error can be predicated in this connection.

Another criticism of the instructions given is that "the court erred in charging the jury at great length upon the claims of the State and upon the claims of the defendant Sophie Kritchman, and her counsel against the defendant, Joseph Mitchell, and in entirely omitting to mention in any manner any of the material and prominent points of defense in favor of the defendant, Joseph Mitchell."

A careful examination of the charge shows that this complaint is unwarranted. All of the essential elements and ingredients of the crime had to be proven by the State beyond a reasonable doubt. The evidence and claims for the prosecution were more voluminous than those of the defendant, and necessarily required more time for explanation. Mitchell's defense consisted of an *alibi*. His requests, four in number, all relating to this subject, were substantially complied with. His claims from the evidence were fully and fairly stated and explained. His counsel, in argument, selects several detached sentences from the charge, and insists that these must have misled the jury and unjustly prejudiced the rights of his client. But the charge must be taken as a whole, and, so considered, it was fair to the defendant. *State* v. *Griswold*, 73 Conn. 95, 100, 46 Atl. 829.

A conductor upon a trolley-car between Naugatuck and Waterbury was called as a witness in behalf of the State, and testified that Joe Mitchell was on his car on Friday, September 17th, or Saturday, September 18th, 1909, but he could not state on which one of these days it was. Upon cross-examination Mitchell's counsel asked the conductor if he testified before the grand jury as to what day he saw Mitchell upon the car.

There was no error in sustaining an objection to this inquiry, as the record showed that it was only excluded for the present, and that thereafter no further evidence was offered as to what the witness had stated before the grand jury. The court in making this ruling did not assume to pass upon the admissibility of this kind of evidence. The law leaves the order of the admission of testimony to be regulated by the discretion of the trial court. There is nothing to show that this discretion was not wisely exercised.

John F. McGrath was called as a witness by the State, who testified upon his direct examination in substance, that he saw Bronislow Kulvinskas at the Waterbury hospital about 5 P. M. on September 18th, 1909, and took his statement. Upon cross-examination this witness stated that he remained in the hospital about ten minutes after taking his statement, during which time Mitchell was brought in by an officer, when the following occurred: Someone said to Kulvinskas, "Do you know this man?" Kulvinskas replied, "Yes." Then Kulvinskas was asked who it was, and he replied "Joe Mitchell." Then Kulvinskas was asked if this Joe Mitchell was the man who shot him, and he said "Yes." That, when he said Mitchell was the man who shot him, "Mitchell threw himself back with his hands out, and he says, 'Christ Almighty! I didn't do it, I don't know anything about it,'" and that then Mitchell went over to Kulvinskas and said something to him in the Lithuanian language, which the witness did not understand, whereupon the officer told Mitchell he would have to speak in English; that he, the witness, did not hear anything further; whereupon counsel for Mitchell, continuing the cross-examination, asked these questions: "Q. Haven't you told me, Mr. Mc-Grath? A. Only as I have told you before, he says, 'Christ Almighty, I didn't do this.' He said that with his hands out, of course it was addressed to this fellow, and then he looked around at the crowd. Q. He was taken by surprise when he was charged with it? (Objected to. Excluded.) Q. Describe his conduct more in detail, if you can? The Court. Whose conduct? Mr. Lynch. Mitchell's conduct. (Objected to. Excluded.)"

These questions were not properly cross-examination on any matters which the witness was examined upon in chief, and it was in the sound discretion of the court to

admit or reject them. It also appears from the record that McGrath had fully described the manner and conduct of Mitchell upon this occasion. The questions, "He was taken by surprise when he was charged with it," "Describe his conduct in detail, if you can," were naturally calculated to call out a repetition of the same testimony either in substance or detail, and, in the absence of any statement that any other answer was sought or expected, was properly excluded, as it tended merely to waste the time of the court and jury in a useless repetition of the evidence.

For the reason last given, the rulings of the court upon substantially the same question put to one Doctor Pomeroy, a witness called by the defendant, do not furnish grounds for a new trial. Assuming that these questions to McGrath and Doctor Pomeroy were admissible, their rejection by the court was not harmful to the defendant, because the facts sought to be proven by them had already been established so that the accused had the full benefit of them.

Sophie Kritchman was called as a witness in her own behalf, and testified at length about visiting Bronislow Kulvinskas Friday evening, September 17th. She testified: "I went up and asked him, 'Ben, tell me what I can do for you.'" Upon cross-examination, Mitchell's counsel asked the following questions: "Q. You went and asked him what you could do for him? A. Yes. Q. What did he say? A. When we got there somebody hollered out of the bushes, 'Shut up or I'll kill you.' We got afraid and we run back. I thought it was Mitchell that was up in the bushes there. Well, it sounded like that voice."

The court did not err in refusing to strike out this evidence. Striking out material and relevant testimony on the ground that it is not responsive to the question is in the discretion of the trial court. *Turner's Appeal,*

72 Conn. 305, 317, 44 Atl. 310; *Nies* v. *Broadhead,*
75 Hun, 255, 27 N. Y. Supp. 52.

There is no error.

In this opinion the other judges concurred.