STATE OF CONNECTICUT *v.* LOUIS LAFOUNTAIN

INGLIS, C. J., BALDWIN, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued December 3, 1953—decided February 8, 1954

*Robert J. Woodruff,* with whom, on the brief, was *A. S. Geduldig,* for the appellant (defendant).

*Lorin W. Willis,* state's attorney, with whom, on the brief, was *Otto J. Saur,* assistant state's attorney, for the appellee (state).

QUINLAN, J.  The defendant was informed against under § 8357 of the General Statutes and charged with aiding, abetting and counseling James Webb in committing robbery, while armed, upon John Thier. He was tried to the jury and found guilty.  Upon this appeal, he claims error in the denial of his motion to set aside the verdict, in the charge and in various rulings made upon the trial.

The denial of the motion to set aside the verdict is the subject of the first two assignments of error. It will receive our first consideration.  The jury reasonably could have found the following facts: The defendant was employed as a bridge painter in Highland, New York.  Sometime before the commission of the crime he began to talk to his coworkers Webb, Orphan and Garay about obtaining "easy money."  On the morning of Thursday, July 20, 1950, a rainy day, the defendant and his three companions drove in Orphan's car from the vicinity of Poughkeepsie to Danbury.  Of the four men, the

defendant was the only one who was aware that Thursday was a pay day for the Danbury Power and Transportation Company. Previously, he had worked with John Thier, the paymaster of the company, and, on several occasions, had accompanied him to the bank where he obtained money for the pay roll. The defendant was acquainted with the customary procedure for obtaining the money. He knew there was a revolver in Orphan's car on the morning of July 20, 1950. On that morning, near the bank in Danbury, he pointed out John Thier to his three companions when Thier, before entering the bank, parked the car he was driving. The defendant had participated in the drawing of lots which resulted in Webb's being chosen to take the gun and commit the actual robbery. The defendant and his two companions, Orphan and Garay, remained in their car while Webb went to rob Thier. They had agreed to pick Webb up at a certain spot. When he did not appear at that place, they drove around Danbury looking for him. Not finding him, they proceeded to drive toward Poughkeepsie, New York. On the way they heard a radio report about the robbery and that the robber had been last seen in Bridgeport. They then went to Bridgeport. Failing to find Webb there, they drove to his home in Wappingers Falls. Upon their arrival, Webb's wife told them that Webb had not returned. The defendant stated that they would remain for two weeks, if necessary. Webb returned late in the night, bringing the money, amounting to about $2900, with him. It was placed on a table and divided among the four men, the defendant receiving a share. There is no need to relate the details of the robbery. It is not disputed that Webb committed it as planned.

It is apparent that, if the jury found the facts as stated above, their verdict of guilty was warranted. In contending that the court erred in its denial of the motion to set aside the verdict, the defendant relies upon the claim that the jury could not have found those facts beyond a reasonable doubt, first because the state's case rested exclusively on the testimony of accomplices and, second, because the evidence in support of the defendant's alibi was so strong that it must have created a reasonable doubt of his guilt.

The action of the trial court in denying the motion is entitled to great consideration because of its position of advantage in passing upon the question. *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860. Unless "the manifest injustice of the verdict is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality," we cannot set the verdict aside. *State* v. *Chin Lung,* 106 Conn. 701, 704, 139 A. 91. It was within the province of the jury to determine the credence to be accorded the testimony of Orphan, Garay and Webb and what effect should be given the evidence offered in support of the alibi. *State* v. *Taborsky,* 139 Conn. 475, 482, 95 A.2d 59; *State* v. *Groos,* 110 Conn. 403, 406, 148 A. 350. The three men were accomplices, but, subject to a proper charge upon that subject, of which we shall speak later, the mere fact that they were accomplices does not require corroboration of their testimony. *State* v. *Heno,* 119 Conn. 29, 33, 174 A. 181; *State* v. *Frost,* 105 Conn. 326, 334, 135 A. 446. Moreover, they were corroborated by Mrs. Webb as to the division of the spoils, and she was not an accomplice. So far as the defendant's alibi is concerned, it was supported by testimony of several witnesses which tended to prove that the defendant was in New Haven at the time the

crime was being committed in Danbury. At least one of these witnesses, however, showed marked bias, and as to all of them there was some question of their ability to relate their testimony or supporting data to the specific day in question. The jury were entitled to disbelieve their testimony and were justified in finding beyond a reasonable doubt that the defendant aided, abetted and counseled James Webb in committing robbery with violence. The denial of the motion to set aside the verdict was proper.

Various assignments of error are addressed to the charge, which must be tested by the finding. The statement of facts adequately describes the state's claims of proof. Such claims of proof of the defendant as are pertinent may be summarized as follows: At the time of the trial the defendant, a single man of good character, twenty-seven years old, lived with his parents in New Haven. He was not present at the claimed robbery and took no part in it, having spent the entire day of July 20, 1950, and the following day in New Haven. While he was employed at Poughkeepsie as a bridge painter for the railroad, he commuted from Danbury, where he then lived with his parents, by means of a car pool. On the morning of July 20, he was late in arriving at his pick-up spot and missed his ride. He decided to go to New Haven. He went by bus to Sandy Hook, then took a regular bus to New Haven and went directly to the office of the Westville Trucking Company, where he intended to apply for a job. He left the office of the company about 5 p.m. During the day, he drove a truck to bring in motor parts at the request of Maurice Hansen, who was in the Westville Trucking Company's yard working on a truck. He also made a trip to lower State Street, New Haven, where a truck driven by Carl Hansen had stalled. It con-

tained articles of freight being shipped by the Bronson and Townsend Company. He was not engaged in his work on the bridge on either July 20 or July 21. After beginning the bridge painting job, the defendant became acquainted with James Webb, Michael Orphan and Joseph Garay, all of whom had been working with him since early May, 1950, but he was not with them at any time on July 20 or July 21, 1950. He again went from Danbury to New Haven on July 21, hired an automobile for his own use, and looked for employment. He returned to Danbury the evening of July 21. He moved to New Haven soon afterward.

The third assignment concerns the refusal to charge pursuant to written requests. We have repeatedly said: "The court is under no duty at any time to charge in the language of requests. Its duty is performed when it gives instructions calculated to give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and suited to their guidance in the determination of those issues." *Radwick* v. *Goldstein,* 90 Conn. 701, 706, 98 A. 583; *Shuchat* v. *Stratford,* 125 Conn. 566, 569, 7 A.2d 387. Some of the requests related to the defense of alibi. It is unnecessary to set forth the form of these requests because reference to the court's charge makes it manifest that the subject was adequately covered by the court. After stating the defendant's claim, the court said: "The defense of an alibi is a perfectly legitimate defense. Courts are accustomed to instruct the jury that it is a defense that is easily manufactured, as experience has shown in the history of court rooms, but in each case is a perfectly legitimate defense, and if the truth of it is established is an absolute defense, but the test is, has

the consideration of the evidence with regard to the
alibi satisfied you either that the accused was else-
where at the time of the commission of the crime or
when the preparations were made for its commis-
sion or has it raised a reasonable doubt in your mind
that he was elsewhere, that is, in this case, New
Haven. If it has done either the one or the other,
the verdict must be not guilty because, as I have
already said, it is the duty of the State to prove the
guilt beyond a reasonable doubt. I have told you
what a reasonable doubt is. The final test is on
this question of alibi, considering all the evidence
in the case [t]ogether with the evidence of the alibi
has the State proved the guilt of the accused as
charged beyond a reasonable doubt? That is the
question for you to ask yourselves and answer by
your verdict." And again: "I think I have already
made it clear. I think I told you that there is at no
time any obligation on the part of the accused to
prove any particular defense; that the burden rests
upon the State throughout to prove the guilt and the
idea of an alibi or any other defense is not putting
up something that the accused must prove either
by a fair preponderance of the evidence or beyond
a reasonable doubt but it is submitted to you with
the expectation or hope that it will show the im-
probability that the State has proved beyond a
reasonable doubt that a certain thing happened
because, of course, to attack this matter of alibi, if
you believe the matter of alibi and place sufficient
credence in it, its function would be to arouse in
your mind a reasonable doubt of the guilt of the
accused."

The second principle embraced in this assign-
ment concerned reasonable doubt. In this instance,
too, it is apparent that the court, while not adopt-

ing the precise language of the requests, amply protected the defendant and made clear to the jury the burden of the state. The jury were instructed that the state must prove its case beyond a reasonable doubt, and the term reasonable doubt was accurately and clearly defined. These instructions, supplemented by what the court said concerning reasonable doubt in connection with alibi, as previously recited, demonstrate the lack of basis for the defendant's criticism of a failure to charge as requested.

The fourth assignment of error involves a reference in the charge by the court to an episode occurring between Carl Hansen, a witness, and Orphan, another witness. This reference was not objected to and no exception was noted. Even if that were not the case, the court's remarks were fair comment upon a matter that might concern the credibility of the witness Hansen. The defendant complains, in his fifth assignment of error, that the court failed to discuss the evidence concerning his whereabouts on July 20 and 21. Not only did the court state the defendant's claims in this regard but the defendant failed to make a request to charge on the subject and took no exception to the charge for the claimed omission. These assignments are without merit.

The sixth and tenth assignments of error are directed at the charge pertaining to testimony of accomplices. The charge so meticulously adhered to our law regarding the caution that should be exercised by the jury in analyzing such evidence that we shall not burden the opinion with its inclusion. Suffice it to say that "[i]t is under our rule within the power of the trier, court or jury, to convict an accused upon the uncorroborated testimony of accomplices to the crime provided the court or jury believe

from their evidence that the crime charged had been proven beyond a reasonable doubt." *State* v. *Frost,* 105 Conn. 326, 334, 135 A. 446. The criticism is without foundation.

The seventh, eleventh and thirteenth assignments of error deal with the cross-examination of the witness Carl Hansen. We do not discuss these assignments in the absence of the taking of an exception.

Assignments eighth, ninth, and twelfth, concerning a written statement which the court required the defendant's counsel to show to the state's attorney, do not require extended discussion. The record does not reveal wherein the defendant was harmed, and it does not appear that the jury saw the paper. It was not offered in evidence. The state might be prejudiced in the eyes of the jury but not the defendant.

Finally, it is contended that the verdict should be set aside because a certain portion of the charge was the equivalent of a directed verdict. The charge should be examined and analyzed as a whole. *State* v. *Heno,* 119 Conn. 29, 37, 174 A. 181. The requirement of our law in a criminal case is that the charge to the jury shall "give to them such instructions as may be required to enable them to understand the nature of the offense charged and the questions which they are to decide, to weigh the evidence applicable to such questions, and to intelligently decide them." *State* v. *Long,* 72 Conn. 39, 43, 43 A. 493. At least seven times in the charge the court provided for a finding of "not guilty." In presenting the possible verdicts, the court began in this fashion: "If you conclude that the accused, LaFountain, was not in Danbury at any time before or during the time when the robbery was being planned or committed, your verdict will be not guilty." It then proceeded to a discussion of lesser crimes that might be

involved and the possible verdicts connected therewith, after which the court again stated that if no crime was committed the verdict would be not guilty. It is only because, in a summary of these crimes, the court omitted mention of a verdict of not guilty that the defendant makes his present contention. Exposed to the above test, the charge is full, adequate, well prepared and a correct charge. It would be unfair to detach a portion of it from its context. *State* v. *Hayes,* 127 Conn. 543, 584, 18 A.2d 895. Nor was any exception taken.

There is no error.

In this opinion the other judges concurred.