STATE OF CONNECTICUT *v.* GARY BENNETT

HOUSE, C. J., BOGDANSKI, LONGO, BARBER and MACDONALD, Js.

Argued October 13, 1976—decision released February 8, 1977

*Charles Hanken,* with whom was *Raymond Blank,* for the appellant (defendant).

*Eugene J. Callahan,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

House, C. J. This is an appeal from the judgment rendered on the verdict of a jury finding the defendant guilty of the crime of rape in the first degree in violation of then § 53a-72 of the General Statutes. The defendant was sentenced to a term of imprisonment of not less than five nor more than ten years.

The defendant has briefed and argued three claims of error. He claims that the trial court erred in its charge and supplemental charge on the law of alibi and in failing to charge on that subject in language requested by the defendant, in its comments to the jury concerning the standards to be used in weighing the credibility of the witnesses for the defense, and in denying the defendant's motion to set aside the verdict.

The state introduced evidence from which the jury could find the following: On January 12, 1972, at approximately 10 to 10:30 a.m., the complaining witness, to whom we will refer as Mary, left her home in Stratford to drive to the Bridgeport library to complete a report for her art class scheduled for 4 p.m. at Housatonic Community College. En route to Bridgeport, she decided to see if a friend and fellow student, to whom we will refer as Olive, wanted to go to the library with her, so she left the thruway at the Pembroke Street exit. Olive lived in a second floor apartment at 202 Hough Avenue in Bridgeport. The house was owned by Mr. and Mrs. Harold Bennett who lived on the first floor with their daughter and son, the defendant.

Olive had a part-time job while going to school so that she was not usually home in the morning. Mary was aware of this but midterm exams were at hand and she believed that, Olive might be staying at home to study. Mary had visited Olive at her apartment about twenty times prior to January 12 and had stayed there overnight on occasion.

Mary arrived at 202 Hough Avenue approximately fifteen to thirty minutes after leaving her home. She knocked at the door and a man answered. She had seen that man at 202 Hough Avenue on at least two prior occasions. Mary asked if Olive was home to which he responded that he did not know. Mary went upstairs to Olive's apartment but Olive was not there. When she came back down, the man was still in the downstairs hallway. She asked him to tell Olive that she had come by. As she started to drive away, the man waved her back saying that Olive had just called and that she would be right back. At the man's invitation, Mary entered the first floor apartment to wait for Olive.

The man accompanied her into the apartment. At the trial, Mary identified the defendant as that man and the man she had seen on the premises on prior occasions. She sat on the couch in the living room, introducing herself as Mary. He said his name was Gary. No one else was in the apartment. There was some conversation. The defendant walked around and left the room on a couple of occasions. For a brief time he sat on the couch with Mary. He also went behind the couch occasionally as though looking out the front window for Olive to arrive. On such an occasion when the defendant was behind the couch, he suddenly threw a rope or cloth-like material over her head like a noose.

The defendant tightened the noose around her neck so that Mary was unable to breathe. She slid from the couch on to the floor, unconscious. When she regained consciousness she was weak, in severe pain, and breathing with great difficulty. The defendant removed the noose from her neck and helped her to her feet. The defendant then took her to a back room in the same apartment. She was crying, too weak to resist the defendant, and "frightened to death."

The room contained a sofa-type bed. The defendant forced her onto the bed, removed her slacks and underpants and forced her to submit to sexual intercourse. Mary identified the defendant in court as the man who forced himself upon her.

After this assault, the defendant ascertained Mary's address and the identity of members of her family. He told Mary that he was a member of the Black Panthers and threatened harm if she were to tell what happened. He ordered her to tell her family that she had been attacked by Puerto Ricans in Stratford.

Upon leaving the apartment, Mary drove to her home in Stratford, arriving at about noon. She collapsed on the stairs and her aunt, Jean Zahner, came to her assistance, finding her emotionally distraught and disheveled and complaining that her neck hurt. She told her aunt that she had been attacked by two Puerto Ricans on East Main Street in Stratford. While Mary was in bed at home prior to being taken to the hospital, Sergeant Alfred E. Dunn of the Stratford police department inquired about the attack on East Main Street. Because she was having difficulty speaking, she nodded as

if to affirm this description of the attack. Owing to her physical and emotional state at the time, Mary did not recall any such communication.

Mary was taken from her home to Milford Hospital by ambulance and immediately transferred to the intensive care unit. She remained in the hospital until January 18. James T. Keegan, the examining physician, expressed the opinion that the neck and facial injuries were caused by severe external compression. He ordered that the police not attempt to question Mary for two days.

In the hospital emergency room, at approximately 1 p.m. on January 12, immediately after Keegan's examination, Mary admitted to her aunt that what she had told her previously was not, in fact, what occurred. On that evening, Jean Zahner visited Mary in the intensive care unit. Mrs. Zahner told her that she would have to give the police an accurate account. Mary replied, "I can't tell you anything. Don't say anything," and, also, to the effect that "he is a member of the Black Panthers" and "he will kill me if I tell on him."

On the afternoon of January 12, Francis J. Hyland, a gynecologist, examined Mary at the hospital. He concluded that there were spermatozoa deposits in the vagina.

Abraham Stolman, chief toxicologist for the state of Connecticut, received items of Mary's clothing at the state laboratory on July 18, 1972. At the trial, he testified that his examination revealed seminal stains on the outside of the crotch of her underpants and that her slacks had seminal stains on the inside of the crotch.

The defendant testified in his own behalf as did several of his friends and schoolmates. They testified in detail to the effect that on the day in question the defendant had left for Harding High School at about 7:45 to 8 a.m. and had remained at school until he took the bus home at about 2:30 p.m.

Two of the defendant's teachers, Mrs. Mary M. Clark and Michael Brown, also testified. Mrs. Clark testified that her attendance records indicated that the defendant was present in her class between 9:59 a.m. and 10:38 a.m. on the day in question; Brown testified that he did not take attendance on January 12 and could not recall whether the defendant was in class on that date.

The defendant claims that the court erred in its charge and supplemental charge on the law regarding an alibi defense, and in failing to charge as requested by the defendant in language which was virtually verbatim the language approved in *State* v. *Brauneis*, 84 Conn. 222, 230-32, 79 A. 70. Instead of adopting the language from the older *Brauneis* case, the court charged in language taken almost verbatim from the court's charge in the more recent case of *State* v. *Cari*, 163 Conn. 174, 303 A.2d 7. On the appeal in the *Cari* case, we found no error in this charge as to the law applicable to an alibi defense. See *State* v. *Malley*, 167 Conn. 379, 382, 355 A.2d 292. The complete *Cari* charge is found in A-533 Records and Briefs and no good purpose would be served in repeating it at length in this opinion. As we noted in the opinion in *Cari*, supra, 182: "On numerous occasions this court has stated that the trial court in a criminal case may, in its discretion, make fair comment on the evidence and particularly on the credibility of witnesses. See *State* v. *Tropiano*, 158 Conn. 412, 428, 262 A.2d 147;

*State* v. *LaFountain,* 140 Conn. 613, 620, 103 A.2d 138; *State* v. *Pecciulis,* 84 Conn. 152, 158, 79 A. 75. In addition, we have also declared that an instruction on the credibility of alibi witnesses similar to that challenged by this assignment of error is both proper and fair when weighed in the light of the other paragraphs of the charge. *State* v. *Groos,* 110 Conn. 403, 410, 148 A. 350; *State* v. *Cianflone,* 98 Conn. 454, 466, 120 A. 347 . . . . It is well recognized that the credibility of alibi witnesses is a subject as to which fair comment by the court to the jury is allowed. See *Sullivan* v. *Scafati,* 428 F.2d 1023 (1st Cir.), cert. denied, 400 U.S. 1001, 91 S. Ct. 478, 27 L. Ed. 2d 452; *Surridge* v. *State,* 239 Ark. 581, 393 S.W.2d 246; *Commonwealth* v. *Sullivan,* 354 Mass. 598, 239 N.E.2d 5, cert. denied, 393 U.S. 1056, 89 S. Ct. 697, 21 L. Ed. 2d 698; *State* v. *Griffin,* 336 S.W.2d 364 (Mo.); *Commonwealth* v. *Gates,* 392 Pa. 557, 141 A.2d 219; *Rogers* v. *State,* 455 S.W.2d 182 (Tenn. Crim. App.); *Bolin* v. *State,* 219 Tenn. 4, 405 S.W.2d 768. We find no error in this portion of the charge to the jury."

As we have repeatedly stated, "[t]he court is under no duty at any time to charge in the language of requests. Its duty is performed when it gives instructions calculated to give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and suited to their guidance in the determination of those issues." *Radwick* v. *Goldstein,* 90 Conn. 701, 706, 98 A. 583; *State* v. *Fine,* 159 Conn. 296, 301, 268 A.2d 649; *State* v. *Alterio,* 154 Conn. 23, 27, 220 A.2d 451; *State* v. *LaFountain,* 140 Conn. 613, 618, 103 A.2d 138. The substance of the instruction in *Brauneis* which the defendant wanted to be given to the jury in this case was in fact included

in the court's charge. In *Brauneis,* this court said (p. 231): "If, upon a fair consideration of the entire evidence, the jury entertained a reasonable doubt as to the defendant's presence at the scene of the crime, it was their duty to acquit, although they were not satisfied from the 'alibi evidence' that he was elsewhere."

The court charged in the present case, in part: "The accused does not have to prove his claim that he was elsewhere. It is sufficient if on considering all the evidence there arises in your mind a reasonable doubt as to his presence at the scene of the crime when it was committed. If you do conclude that there is such a doubt, the accused is entitled to a verdict of not guilty." It further charged: "I tell you again that there is no burden on this accused to prove himself innocent of the crime charged, but it is the state's burden to prove him guilty beyond a reasonable doubt. And that burden rests upon the state throughout the entire trial."

In complying with the jury's request to repeat the alibi instructions, the court, in its supplemental charge, essentially repeated its original charge on the subject, including the instruction we have just quoted. As this court has previously stated regarding a jury's request for a supplemental charge: "Far from indicating confusion on the part of the jury, as the defendant intimates in its brief, the request indicated a conscientious effort on the part of the jury to cope with perhaps the most important factual question in the case as it had been submitted to them." *Gigliotti* v. *United Illuminating Co.,* 151 Conn. 114, 120, 193 A.2d 718. We find no merit to the claims of error addressed to the portions of the charge and the supplemental charge concerning the defendant's alibi defense.

The defendant next assigns as error the trial court's comments to the jury concerning its task in weighing the credibility of the witnesses for the defense. This claim rests on two main points. First, the defendant argues that the comments in question unfairly included in the same category all of the defendant's alibi witnesses, when it was unreasonable to consider one of the defendant's schoolteachers with thirty-eight years of experience in the same group as the defendant's classmates who might be prone to fabricate an alibi. Second, the defendant submits that the comments in question were not an independent, legitimate response to the facts and testimony elicited at the trial, but a mere recitation of a standardized charge on alibi defenses. See *State* v. *Cari,* 163 Conn. 174, 181, 303 A.2d 7.

As to the first point, the court did not include the teacher Mrs. Clark in the same category as the defendant's schoolmates but carefully tailored the charge approved in *State* v. *Cari,* supra, to the evidence in this case, noting that alibi evidence frequently, "in part at least," consists of testimony of those who are "in this case, family and schoolmates of the accused." Furthermore, the jury were asked by the defendant to rely on the accuracy of Mrs. Clark's attendance records which indicate not only that the defendant was present in class on the day of the crime, January 12, 1972, but also on the following day when the defendant himself admits he was absent. He testified that the only day he attended school that week was January 12.

As to the second point stressed by the defendant, the court's comments concerning the tests it should apply in weighing the credibility of alibi witnesses were apt, relevant, and well within its discretion. *State* v. *Cari,* supra.

We also find no error in the instruction of the court to the jury concerning the factors to be considered in weighing the credibility of the testimony of the defendant. Early in its charge, the court fully instructed the jury that it was their sole function to determine what witnesses they would believe and to what extent. It cautioned them that the testimony of a police officer is not entitled to any greater weight merely because the witness is a police officer, and, as we have already noted, properly commented on the factors which the jury might well consider in weighing the credibility of alibi witnesses.

With respect to the testimony of the defendant, the court charged as follows: "Concerning the accused who testified here, I might add this: An accused person is not obliged to take the witness stand in his own behalf. On the other hand, he has a perfect right to do so, as this accused Gary Bennett has done. In weighing the testimony that he has given you, you should apply the same principles by which the testimony of other witnesses are tested, and that necessarily involves a consideration of any interest that he might have in the case. You will consider the importance to him of the outcome of this trial and his motive on that account for perhaps telling the truth. An accused person once having taken the witness stand, stands before you just like any other witness and is entitled to the same consideration and must have his testimony measured in the same way as any other witness, including, however, his interest in the verdict you will render. You should also consider any possible bias or prejudice or sympathy or friendliness which any witness may have, whether for or against the state or for or against the accused. You should

consider a witness' interest or lack of interest of whatever sort in the outcome of the trial, his ability to observe facts correctly. And when I say 'his' I am also including females, I am not omitting females. Instead of saying his or hers each time, I am using the pronoun 'his.' "

The only relevant exception which the defendant took to the charge aside from that with reference to alibi witnesses, which we have already indicated was proper, was in the following language: "By the same token, Your Honor said that the accused took the stand, and they must also bear in mind his interest in the outcome of the case. In other words, everybody's interest in the outcome of the case relates to the defendant." At no time, either during the trial or on this appeal, has the defendant claimed that he was deprived of due process of law, and, in the portion of the charge which we have quoted, the court clearly did not limit the factor of interest to consideration of the testimony of the defendant's witnesses. Rather, it clearly included all witnesses in its instruction: "You should also consider any possible bias or prejudice or sympathy or friendliness which any witness may have, whether for or against the state or for or against the accused. You should consider a witness' interest or lack of interest of whatever sort in the outcome of the trial, his ability to observe facts correctly."

In his brief, the defendant has limited his claim of error with respect to this portion of the charge to the single sentence in the portion we have quoted above: "You will consider the importance to him of the outcome of the trial and his motive on that account for perhaps telling the truth," emphasizing the last four words. In using the word "perhaps" instead of "not" the court departed from the usual

charge given in such instances. *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378; *State* v. *Moynahan,* 164 Conn. 560, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 219; Wright, Conn. Jury Instructions § 669. If anything, the court's use of the word "perhaps" rather than "not" was more favorable to the defendant and it clearly was not in any way prejudicial to him.

It is well-settled law that "[t]he fact that the witness is a defendant in a criminal prosecution, or is a participant in the offense or in a related offense, creates an interest which affects his credibility." 81 Am. Jur. 2d 669, Witnesses, § 667. "Where a defendant in a criminal case testifies in his own behalf, his interest in the result is a proper matter to be considered as bearing on his credibility, and it has been considered that his position of itself renders his testimony less credible than if he were a disinterested witness, especially where he has a criminal record." 98 C.J.S. 484, Witnesses, § 543. As we said in *State* v. *Guthridge,* 164 Conn. 145, 151, 318 A.2d 87, cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186: "The rule is well settled in this state that the court may advise the jury that in weighing the credibility of an accused's testimony they can consider his interest in the outcome of the trial." We have adhered to this rule in many cases. *State* v. *Jonas,* supra, 579; *State* v. *Moynahan,* supra, 574; *State* v. *Palko,* 122 Conn. 529, 534, 191 A. 320, aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288; *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184; *State* v. *Saxon,* 87 Conn. 5, 22, 86 A. 590; *State* v. *Fiske,* 63 Conn. 388, 392, 28 A. 572.

In *Reagan* v. *United States,* 157 U.S. 301, 15 S. Ct. 610, 39 L. Ed. 709, a unanimous United States

Supreme Court, while recognizing that the controlling federal statute forbade all comment in the presence of the jury on the omission of an accused to testify, approved a charge stating (p. 304): "The law permits the defendant, at his own request, to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit." In its opinion, the court noted (p. 305) with respect to the testimony of an accused: "It is within the province of the court to call the attention of the jury to any matters which legitimately affect his testimony and his credibility. This does not imply that the court may arbitrarily single out his testimony and denounce it as false. The fact that he is a defendant does not condemn him as unworthy of belief, but at the same time it creates an interest greater than that of any other witness, and to that extent affects the question of credibility. It is, therefore, a matter properly to be suggested by the court to the jury. . . . This rule is equally potent in criminal as in civil cases, and in neither is it error for the trial court to direct the attention of the jury to the interest which any witness may have in the result of the trial as a circumstance to be considered in weighing his testimony and determining the credence that shall be given to his story." After reviewing cases from several jurisdictions, the court concluded (p. 310): "The import of these authorities is that the court is not at liberty to charge the jury directly or indirectly that the defendant is to be disbelieved because

he is a defendant, for that would practically take away the benefit which the law grants when it gives him the privilege of being a witness. On the other hand, the court may, and sometimes ought, to remind the jury that interest creates a motive for false testimony; that the greater the interest the stronger is the temptation, and that the interest of the defendant in the result of the trial is of a character possessed by no other witness, and is therefore a matter which may seriously affect the credence that shall be given to his testimony. The court should be impartial between the government and the defendant. On behalf of the defendant it is its duty to caution the jury not to convict upon the uncorroborated testimony of an accomplice. . . . And if any other witness for the government is disclosed to have great feeling or large interest against the defendant, the court may, in the interests of justice, call the attention of the jury to the extent of that feeling or interest as affecting his credibility. In the same manner in behalf of the government, the court may charge the jury that the peculiar and deep interest which the defendant has in the result of the trial is a matter affecting his credibility, and to be carefully considered by them."

We find no error in the court's charge with respect to the considerations they should have in mind in testing the credibility to be given to the defendant's testimony.

We also find no error in the court's denial of the defendant's motion to set aside the verdict on the ground that the evidence was insufficient to support a conviction. In reviewing the ruling on such a motion, the evidence must be given the construction most favorable to sustaining the jury's ver-

dict. *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411; *State* v. *Raffone,* 161 Conn. 117, 121, 285 A.2d 323. The evidence which we have heretofore summarized in this opinion amply supports the jury's verdict and in the light of our recent decisions in *State* v. *Bennett,* 171 Conn. 47, 368 A.2d 184, and *State* v. *Jonas,* 169 Conn. 566, 363 A.2d 1378, the defendant at the time of argument properly abandoned his briefed contention that it was necessary for the state to corroborate by independent evidence the existence of each element of the statutory offense of rape.

There is no error.

In this opinion LONGO, BARBER and MACDONALD, Js., concurred.

BOGDANSKI, J. (dissenting). The accused in this case testified in his own behalf. Thereafter the court charged the jury in part as follows: "In weighing the testimony that . . . [the defendant] has given you, you should apply the same principles by which the testimony of other witnesses are tested, and that *necessarily involves a consideration of any interest that he might have in the case.* You *will* consider the *importance to him* of the outcome of this trial and *his motive on that account* for *perhaps* telling the truth. An accused person having once taken the witness stand . . . must have his testimony measured in the same way as any other witness, *including, however,* his interest in the *verdict which you will render."* (Emphasis added.)

The defendant took exception to that charge claiming that it was clearly prejudicial and had the effect of totally diminishing his defense in the eyes of the jury. In my view, the use of this often-repeated charge unduly singles out the defendant's

testimony and improperly comments on his motives and interest in the outcome of the verdict without similarly commenting on the possible motives and interests of the complaining witnesses.

A defendant is presumed innocent until proven guilty; *Deutch* v. *United States,* 367 U.S. 456, 471, 81 S. Ct. 1587, 6 L. Ed. 2d 963; *Coffin* v. *United States,* 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481; and if he does not testify, no comment can be made upon his failure to do so. *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106. The charge in this case placed a premium on the defendant's decision to testify. It had the effect of relegating his claim of innocence to a less credible testimonial category than that of the complaining witnesses. By creating such a circumstance, the charge undermines the presumption of innocence by attributing a motive to the defendant that can only attach if he is indeed guilty as charged.

Even under the notions of the 1894 decision, *Reagan* v. *United States,* 157 U.S. 301, 15 S. Ct. 610, 39 L. Ed. 709, cited by the majority, the United States Supreme Court recognized (p. 305) that a court may not arbitrarily single out a defendant's testimony and said (p. 310): "The import of . . . [the authorities cited in the *Reagan* decision] is that the court is not at liberty to charge the jury *directly* or *indirectly* that the defendant is to be disbelieved because he is a defendant, for that would practically take away the benefit which the law grants when it gives him the privilege of being a witness." (Emphasis added.) This state's "traditional" charge to the jury, which denigrates the weight to be accorded an accused's testimony, has that unfortunate and prejudicial result.

"[T]he accused's right to a fair trial in a fair tribunal is the very foundation of due process. '. . . Every procedure which would offer a possible temptation to the average man . . . to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' *Tumey* v. *Ohio,* 273 U.S. 510, 532, 47 S. Ct. 437, 71 L. Ed. 749; *Estes* v. *Texas,* 381 U.S. 532, 543, 85 S. Ct. 1628, 14 L. Ed. 2d 543." *Aillon* v. *State,* 168 Conn. 541, 546, 363 A.2d 49. To single out the defendant for exercising his *right* to testify is equally as repugnant as commenting on the exercise of his *right* to remain silent.

The better rule is to limit the charge to a general statement of the elements by which all witnesses' testimony should be weighed: not to single out the defendant's testimony as less trustworthy than that of other witnesses. See *State* v. *Jonas,* 169 Conn. 566, 578–80, 363 A.2d 1378 (*Bogdanski, J.,* concurring and dissenting); see also, e.g., *United States* v. *Brown,* 453 F.2d 101, 107 (8th Cir.), cert. denied, 405 U.S. 978, 92 S. Ct. 1205, 31 L. Ed. 2d 253; *Garvin* v. *State,* 255 Ind. 215, 217–22, 263 N.E.2d 371; *State* v. *Bester,* 167 N.W.2d 705, 706–10 (Iowa); *Bryson* v. *State,* 291 So. 2d 693, 694–95 (Miss.); *Hall* v. *State,* 250 Miss. 253, 265–67, 165 So. 2d 345; *State* v. *Finkelstein,* 269 Mo. 612, 618–22, 191 S.W. 1002; *Graves* v. *State,* 82 Nev. 137, 138–42, 413 P.2d 503; *State* v. *Bruyere,* 110 R. I. 426, 430, 293 A.2d 311; *Stewart* v. *State,* 484 S.W.2d 77, 79 (Tenn. Crim. App.); and cases cited at 85 A.L.R. 523, 577.

I would, therefore, find error, set aside the judgment and order a new trial.