# Commonwealth *v.* DePalma, Appellant.

*Criminal law—Murder—Alibi—Charge.*

1. Where on the trial of an indictment for murder the defense is an alibi, an instruction to the jury is proper which in effect states that the jury should acquit the prisoner, if his testimony as to his whereabouts at the time of the alleged killing is sufficient to create in their minds a reasonable doubt of his having committed the act; and this is the case although the court does not specifically instruct the jury that the defense was an alibi, and define the meaning of that term.

*Criminal law—Murder—Reasonable doubt—Charge—Reputation—Character.*

2. On the trial of an indictment for murder, the trial judge commits no error in charging the jury that "by reasonable doubt we do not mean the doubt that comes to men to justify themselves in their own eyes in avoiding the performance of a solemn duty and that thereby causes them to set aside their own convictions, and to move them away from the aim which they should have ever before them to arrive at a true verdict."

3. An instruction that "our common experience is that men go along for a long time with fine reputations so that they can always prove a good character in court, and yet do commit crimes," will not be deemed to minimize the importance of character evidence, where such instruction, read in connection with the remainder of the passage from which it was taken, shows that proper weight was given to such evidence.

*Criminal law—Murder—Jury—Challenge for cause—Prejudice-—Discretion of court—Abuse of discretion.*

4. Where a juryman in a trial of an Italian for murder, states that he has a prejudice against the Italians as a class because "they are too much for murder," the trial judge does not abuse his discretion in overruling a challenge against the juryman for cause, where the latter states that he could give the defendant a fair trial as a man, notwithstanding his feelings against the Italians as a class.

*Criminal law—Murder—Evidence—Photographs—Failure to object—Harmless error.*

5. A conviction of murder will not be reversed because the trial judge permitted the jury without objection by counsel to take out with them photographs of certain exhibits formally offered in evidence, and in possession of the jury, although the photographs were not offered in evidence.

*Criminal law—Murder—Evidence—Collateral issues.*

6. On the trial of an indictment for murder where the motive of the killing was alleged to be an intimacy between defendant and the wife of deceased, an offer by defendant to show the relations of the wife with other men than himself, is properly overruled as having no connection with the issue being tried, and opening the door for the introduction of collateral issues.

*Criminal law—Murder—Evidence—Failure to deny charge when under arrest.*

7. On a murder trial, where it appears that defendant and the wife of deceased, the one being Italian and the other Polish, had had intimate relations for a considerable time, and that they both spoke English, it is not error for the trial judge to admit a question by decedent's wife in English to defendant while under arrest, as follows: "You know what you say on Friday, you fix him, you tell him you fix, and you fixed," to which defendant made no reply.

*Criminal law—Murder—Charge as a whole—Failure to request further instruction.*

8. Where a murder trial lasts a week, and 750 pages of testimony are taken and the charge covers 30 pages, the charge as a whole

will not be deemed unfair to defendant, although it does not refer to some of the testimony given for defendant, where the trial judge at the end of the charge asks counsel if there is any special matter to which they desire him to refer as additional instruction.

Argued April 12, 1920.   Appeal, No. 294, Jan. T., 1920, by defendant, from judgment of O. & T. Luzerne Co., April T., 1919, No. 45, on verdict of guilty of murder of the first degree in case of Com. v. Tony DePalma, alias Tony Palma.   Before BROWN, C. J., STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Affirmed.

Indictment for murder.   Before STRAUSS, J.

The opinion of the Supreme Court states the facts.

Verdict of murder of the first degree, upon which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings and instructions set forth in the opinion of the Supreme Court.

*A. P. Conniff* and *Jos. F. Cohan,* for appellant, cited on the question of alibi: Com. v. Andrews, 234 Pa. 597; Briceland v. Com., 74 Pa. 463; Watson v. Com., 95 Pa. 418; Turner v. Com., 86 Pa. 54; Rudy v. Com., 128 Pa. 500.

As to the challenge: Com. v. Mosier, 135 Pa. 221; Harrisburg Bank v. Forster, 8 Watts 304; Pinder v. State, 27 Fla. 370.

As to photographs sent out with jury: Udderzook v. Com., 76 Pa. 340.

*Arthur H. James,* District Attorney, for appellee.

OPINION BY MR. JUSTICE FRAZER, June 26, 1920:

On January 27, 1919, between 12 and 12:30 a. m., Bronislaw Myskowski was found dead in his bedroom, his throat having been cut with a sharp instrument. Defendant, who lived at a boarding house about six hundred feet distant, was placed under arrest early the

same morning charged with committing the crime. The evidence produced on the part of the Commonwealth was wholly circumstantial, the motive being based on an intimacy existing between defendant and the wife of deceased. The jury returned a verdict of murder in the first degree and, after refusal of the court below to grant a new trial, this appeal followed. The numerous assignments of error will be discussed in the order argued by counsel.

The fourth and fifth assignments complain that the trial judge erred in failing to instruct the jury on the meaning of the word "alibi" and as to the burden of proof relating to the defense. Defendant testified he spent the better part of the evening at home and shortly before 12 o'clock went outside for a few minutes and then to bed and slept until awakened by the officers who arrested him. Before retiring he requested his boarding mistress to call him at six o'clock. His statement of the time he retired is corroborated by the woman, and the fact that he was asleep in his bed at the time of his arrest was testified to by the officers. Defendant's boarding house keeper further testified she usually heard the least noise at night and did not hear defendant leave the house after going to his room. It is conceded that defendant did not remain outside the door of his boarding house more than two or three minutes immediately before retiring. In commenting on the testimony offered to establish an alibi, the trial judge did not define to the jury the meaning of the term, nor did he in fact use the word in his instructions, but, in referring to various matters of defense, said: "There are the witnesses who testified to the occurrences at Florio's house on Sunday afternoon. This does not directly bear upon the crime, but it is only given as part of defendant's history, accounting for his whereabouts during the entire day......there is the testimony of the two Yanchulas and of Tony himself, as to the time he retired, as to the last they knew about him on Sunday evening, how he remained up until about

twelve o'clock, and how he retired, and how he called out to them to wake him in the morning, and how they heard him throw his shoes, or drop his shoes," etc. The court then stated further: "If, after considering all this evidence, you have a reasonable doubt of defendant's guilt, you should acquit the defendant." The court also asked counsel if there was anything further to which they desired reference to be made and in response to a request of counsel the court referred to certain testimony.

The jurors were thus, in effect, instructed that it would be their duty to acquit defendant if his testimony as to his whereabouts was sufficient to create in their minds a reasonable doubt of his having committed the act. This instruction gave him the benefit of all testimony tending to establish an alibi. The mere fact that the court did not specifically instruct that the defense was an alibi and define the meaning of the term to them is not reversible error under the circumstances. The jury must certainly have understood that if they believed the testimony of defendant that he went to bed before twelve o'clock and remained there until near morning, he could not have committed a crime between those hours at another place. The actual affirmative proof of an alibi for the entire time during which the crime was committed, from 12 to 12:30 a. m., rested almost wholly upon the testimony of defendant and upon his credibility. The reference to the matter of defense, though brief, gave defendant every benefit to which he was legally entitled and permitted the evidence of an alibi to warrant an acquittal if it raised in the minds of the jurors a reasonable doubt as to defendant's guilt. This is substantially the rule approved in Briceland v. Commonwealth, 74 Pa. 463, 470.

The eleventh and twenty-first assignments complain of the insufficiency of the charge in defining reasonable doubt. In Commonwealth v. Andrews, 234 Pa. 597, this court stated (page 608) it to be the duty of the trial judge in every murder trial to define to the jury the

meaning of the term "reasonable doubt." The trial judge in this case repeatedly stated in his instructions that before there could be a conviction of murder the jurors must be convinced beyond a reasonable doubt that defendant committed the crime, but did not specifically define the phrase except as appears in the part of the charge wherein it was stated that "by reasonable doubt we do not mean the doubt that comes to men to justify themselves in their own eyes in avoiding the performance of a solemn duty and that thereby causes them to set aside their own convictions and to move them away from the aim which they should have ever before them to arrive at a true verdict. No consideration of sympathy, no consideration of any kind should sway the jury, except the desire to arrive at a true verdict, and when moved by these considerations only there remains, after weighing and pondering all the evidence in the case, a reasonable doubt as to the verdict of guilty, that doubt should change the verdict to not guilty." While this definition is in a sense negative, it is not misleading and we cannot say the failure to go further and give an affirmative definition is ground for reversal. It is not reasonable to suppose the jury misunderstood the language quoted, especially in view of the frequent repetition to the effect that the jury must be satisfied beyond a reasonable doubt of defendant's guilt.

The twelfth assignment is to that portion of the charge in which the trial judge stated—"our common experience is that men go along for a long while with fine reputations, so that they can always prove a good character in court, and yet do commit crimes." While this clause, standing alone, might be properly subjected to the criticism that it minimized the importance of character evidence, yet, when read in view of what immediately preceded and followed, the entire instruction as to the weight to be given such evidence was not improper. The complete statement relating to this assignment was that—"Evidence of character is substantial

evidence, it is to be taken and considered with all the other evidence in the case. It is not brought into a case upon the theory that a man of good character will never commit a crime, because our common experience is that men go along for a long while with fine reputations, so that they can always prove a good character in court, and yet do commit crimes, but there are instances in which a man has nothing else to rely upon, except the fact that he has led a blameless life among his neighbors; that he has been known as a quiet, peaceable and law-abiding man, and there are cases in which this matter of character alone will justify the jury in a reasonable doubt, and cause them to bring in a verdict of not guilty —whether this is one of these cases is essentially a matter for you. The law to the effect of character is substantially as I have given it to you—it is to be considered with all the other evidence in the case, as one of the facts presented for your consideration, and given the weight to which you shall deem it entitled, under all the circumstances of the case." The foregoing is a correct statement of the law and discloses that the criticism made by defendant is without foundation.

The twenty-eighth assignment is to the refusal of the trial judge to sustain defendant's challenge for cause of one of the jurors. The juror testified on examination as follows: "Q. Have you any prejudice against Italians as a class? A. Well, I think—yes. By the Court: Q. Is your prejudice against Italians such as would prevent you from giving to him a fair trial, as a man? A. Well, as a race they are too much for—murder. Q. You should not give any opinion concerning a race, you are simply to answer the question. Couldn't you give this man a fair trial, as a man? A. I could give him a fair trial as a man, yes. Q. Without being influenced by any feeling that you may have against Italians as a class? A. Yes. Q. The same fair trial as you would give any other man in this case, if you happened to be a juror? A. Yes. Q. You could do that, and you would? A. I

could do that." The test laid down by this court in Com. v. Eagan, 190 Pa. 10, and followed in Com. v. Nye, 240 Pa. 359, 370, is whether or not the juror can throw aside his impression, opinion or prejudice and render an impartial verdict on the evidence alone, and that, when questioned in relation to his impression or opinion, the weight of his answer is not to be determined exclusively by the words he uses, but rather by his manner and bearing, as to which the trial judge, who has the juror before him, is the best judge, to whose discretion reasonable latitude must be allowed. Measured by this standard, the trial judge did not abuse his discretion in refusing to sustain defendant's challenge for cause.

The thirteenth assignment is to the action of the trial judge in permitting the jurors to take out with them certain microphotographs of exhibits formally offered in evidence, though the original photographs were not. Both, however, had been used and referred to by court and counsel in the course of the trial. Had the photographs been offered in evidence they would, no doubt, have been admitted, in which case the court could properly have permitted them to be taken out by the jury. No objection was made to them at the time, nor until four months after the trial, when defendant's counsel, from an examination of the record, discovered the exhibits had, in fact, been used by the jury in their deliberation. Under the circumstances, and in view of the fact that the photographs in no way altered the original object duly admitted in evidence and in possession of the jury, the error was not harmful to defendant and the oversight in not formally offering the photographs in evidence is not sufficient ground for reversal.

The twenty-third assignment is to the action of the court in sustaining the Commonwealth's objection to an offer made by defendant to show the relations of deceased's wife with men other than defendant. Such evidence would have introduced entirely irrelevant matters having no connection with the issue then being tried,

and opened the door for the introduction of collateral issues having no bearing on the case.

The twenty-fifth assignment complains of the admission of evidence of statements made by deceased's wife to defendant while under arrest and after having been taken to the town hall. Defendant asked, "What is the matter, Helen?" and she replied, "You know what you say on Friday, you fix him, you tell him you fix, and you fixed," and that to this statement defendant made no reply. The testimony was properly received and is within the rule that where one is charged with a crime and having opportunity to speak remains silent and makes no denial of the accusation, his silence may be considered by the jury as a circumstance in determining his guilt: Com. v. Zorambo, 205 Pa. 109; Com. v. Aston, 227 Pa. 112. The contention is, however, that defendant being an Italian and deceased's wife Polish, neither understanding the language of the other, and comparatively little English, the court should have instructed the jury that if they found defendant did not understand what was said they should disregard the incident entirely. While silence under circumstances indicating a person failed to understand what was said could not be used as an admission (Catanzaro v. Penna. R. R., 230 Pa. 305), defendant and deceased's wife both spoke English at the time of the arrest and had sustained intimate relations for a considerable time, consequently defendant evidently understood her answer to his question.

The twentieth assignment complains that the court in the charge prominently presented the theory and main features of the prosecution and ignored those of defendant. The trial lasted a week and the testimony covers seven hundred and fifty printed pages, while the charge of the court covers over thirty pages. At the end of the charge the trial judge, after referring to matters offered in defense, said "all these circumstances are still fresh in your mind and it would be idle for me to detail them at length," following this language by asking counsel

if there was any special matter to which they desired him to refer as additional instruction. In view of the length of the trial, it was impossible for the court to refer in detail to the testimony. The charge as a whole was fair and the defendant was given the benefit of every legal right.

We deem it unnecessary to consider separately the remaining assignments and merely state an examination of them shows they are without merit.

The judgment is affirmed and the record remitted to the court below for the purpose of execution.