## Commonwealth *v.* Gates.

558

Argued March 18, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*G. S. Parnell, Sr.,* with him *G. S. Parnell, Jr.,* and *Parnell and Parnell,* for appellant.

*Donald M. Miller,* Special Assistant District Attorney, with him *J. Murray Buterbaugh,* District Attorney, for appellee.

OPINION BY MR. JUSTICE ARNOLD, May 2, 1958:

The defendant was indicted and tried for the murder of his neighbor and landlord, Louis Turk. The jury returned a verdict of murder in the first degree and fixed the penalty at life imprisonment. After refusal of his motion for new trial, he now appeals from the judgment and sentence.

Defendant assigns numerous reasons in support of his appeal, raising the following questions: (1) Was the evidence sufficient to justify the verdict? (2) Were there reversible errors in the admission and rejection of testimony? (3) Was the alleged after-discovered evidence sufficient to require grant of a new trial?

" 'Under the Act of February 15, 1870, P. L. 15 [19 PS §1187], it is our duty to review both the law and the evidence and determine whether the ingredients necessary to constitute first degree murder have been proved. *If there is competent evidence to support the verdict we cannot usurp the function of the jury* and reverse merely because it might be contended they should not have believed the witnesses produced on behalf of the Commonwealth' ": *Commonwealth v. Watkins,* 298 Pa. 165, 167, 168, 148 A. 65. (Italics supplied). ". . . The sufficiency of the evidence must be tested according to the Commonwealth's evidence": *Commonwealth v. Wright,* 383 Pa. 532, 536, 119 A. 2d 492. Thus, in relating the facts, we must take as a verity the believable evidence of the Commonwealth; and so considered, we have the following: At approximately 8:30 P.M., on the evening of June 14, 1957, Louis Turk died as a result of being shot in the arm and back, while standing in the yard of his home in

Young Township, Indiana County. Shortly after noon, of the same day, defendant had gone to the deceased's home and asked for him. The victim's wife informed defendant that he was working in the field. The defendant talked to her for about fifteen minutes, during which time he stated that he wanted to take her and the victim for a ride. He then left, presumably to return to his home, which was across the road from the Turk home and some 235 feet distant therefrom.

The victim's son and daughter-in-law, John and Dorothy Turk, lived next door to the double house owned by the victim and occupied on one side by George Horn and on the other side by the defendant. At approximately 5:15 defendant approached the victim's son, John Turk, who was then working in his garden, and proceeded to be quarrelsome and abusive toward him and his wife, Dorothy Turk. Particularly he bitterly complained about the victim raising his rent. This colloquy ended by the Turks entering their home. At approximately 8:15 P.M., according to Mary Turk, wife of the victim, defendant came again to their home and talked for several minutes about an argument which he had had with their son and daughter-in-law. When admonished by Mary Turk that he should not engage in such arguments, he took a pistol from his pocket and declared that he was "so mad I pretty near kill them." When she again told him to refrain from bothering them, he then pointed the pistol toward her and, in her words, declared "I kill you." Thereupon the victim requested him to leave, and after defendant repeated his displeasure over the increased rent, he walked out, followed by the victim. Upon arriving at the berm of the road at the end of the walk leading thereto from the house, he turned and shot the victim in the arm. The victim turned his back upon him, calling for help, and at this point defendant shot

him in the back. He then fired at Mary Turk, who was standing in the doorway of their home, and struck her in the neck. Following this, he returned to his home, obtained his truck, and drove past the Turk home at a slow rate of speed. All of these incidents of shooting were observed not only by the victim's wife, but also by their son and daughter-in-law, John and Dorothy Turk. Their identification of defendant was positive and without conflict. In addition, George Horn, defendant's neighbor, also testified to the fact that he talked to defendant outside his home at some time beginning with "ten or fifteen minutes after 8:00," during which time the defendant related the argument which he had engaged in with John and Dorothy Turk. He also testified that he left to go back into his own home to view "The Life of Riley," a program televised at 8:30 P.M.

Defendant was arrested but denied at the trial that he had committed the crime. He also produced several witnesses who testified to seeing him at a point several miles away at about the time of the killing, i.e. testimony as to an alleged alibi.

Defendant urges that the Commonwealth did not prove all of the elements of murder in the first degree, —that it did not prove guilt beyond a reasonable doubt, did not establish malice or premeditation. But to sustain this position is to disregard the Commonwealth's testimony. Premeditation was definitely and affirmatively established by the testimony of Mary Turk; and malice is reasonably inferred from the circumstances. "Legal malice may be inferred and found from the attending circumstances": *Commonwealth v. Bolish*, 381 Pa. 500, 511, 113 A. 2d 464. In *Commonwealth v. Watkins*, 298 Pa. 165, 148 A. 65, where the evidence was that defendant had struck his wife five blows on the head with a blunt instrument, this Court, at page 168;

declared: "The vicious character of the blows and their number lead to no other conclusion than that of a deliberate intent to take life. The nature of the wounds inflicted indicate such a specific intent to kill as points to first degree murder. The absence of a struggle and the location of the wounds support the finding of a deliberate and premeditated murder and fully justify the verdict." So in the instant case the proof, together with its reasonable inferences, establish the elements required to sustain the verdict. See also *Commonwealth v. Holley*, 358 Pa. 296, 56 A. 2d 546. Nor was it necessary, as defendant contends, to establish a motive for the killing. ". . . Murder may be committed without a motive, either actual or apparent . . .": *Commonwealth v. Samuel Jones*, 355 Pa. 522, 530, 50 A. 2d 317. Thus, contrary to the defendant's claim, the court did not err in failing to charge on motive, which was never made an issue in the case.

Defendant strenuously urges that the court also erred in refusing to admit testimony "about the members of the Turk family except as to their truth and veracity or prior conviction of crime." His offer was to show that Mary Turk had operated a "speakeasy," had had quarrels in times past with her husband, and that a number of years prior to this occurrence she had lived with another man. The court was under no right or duty to admit such testimony. It could have served no proper purpose either in establishing the guilt or innocence of defendant or in attacking the credibility of the witnesses. Cf. *Commonwealth v. Bednorciki*, 264 Pa. 124, 107 A. 666, and *Commonwealth v. DePalma*, 268 Pa. 25, 110 A. 756. In the *Bednorciki* case it was held inadmissible to offer to prove that four months before the homicide another man had threatened "to fix" the victim and was also seen near decedent's residence a few days before the killing.

Defendant's contention that it was physically impossible for defendant to have shot the victim—this on the theory that there were minor conflicts in testimony—cannot be sustained. The testimony was quite direct and positive by the eyewitnesses and the pathologists, as to positions of the parties, the course of the bullets, and the cause of death, all of which were left with the jury for determination. This argument of the defendant is solely for the jury, being entirely factual, and that body chose to believe the testimony of the Commonwealth. Nor was it necessary to produce the pistol used in the killing. The Commonwealth established by three witnesses that defendant fired fatal shots from a pistol, and the fact that the Commonwealth failed to find it after the occurrence is not material to its case. In fact, it is not even necessary to produce the victim's body to prove the corpus delicti in homicide, it being sufficient that there be before the jury evidence from which it can find that the death resulted from a felonious act: *Commonwealth v. Agoston*, 364 Pa. 464, 72 A. 2d 575.

The defendant also urges that the court erred in its charge as to alibi. After a very strong and lengthy charge on the burden imposed upon the Commonwealth to prove guilt beyond a reasonable doubt, the court charged: "Now the theory of the defense in this case is that the defendant was not there; that he had nothing to do with this shooting. We say to you that that type of defense is known as an alibi. *An alibi is a perfect defense if you believe it.* It is designed to prove that the defendant during the whole of the time was away from the place where the crime was committed, and that he could not have participated in it. Evidence of this kind should be carefully scrutinized and weighed by the jury as in all cases, which requires frequently very great nicety as to the recollection by

witnesses of particular dates and events, of particular hours or half hours or even minutes of the day on which the offense to which it relates was committed. The setting up of an alibi as a defense does not change the burden upon the Commonwealth by the pleas of not guilty of the prisoner, or waive his right to demand from the Commonwealth, before he can be convicted, a full and complete proof of his guilt beyond a reasonable doubt, but where a person sets up an alibi as a defense, *the burden of proving his alibi to the satisfaction of the jury is thrown upon him.* If he does not do this, his defense of alibi falls completely." (Italics supplied). It will be noted at this point that the court, at the conclusion of its charge, twice inquired of counsel whether they desired anything further, and no requests in this regard were made, although making several other requests. In any event, the charge was proper. In *Commonwealth v. Jordan*, 328 Pa. 439, 196 A. 10, at page 446, we declared that "the measure of proof required for the defense of alibi is merely a preponderance of the evidence, or, as it is sometimes stated, *proof 'to the satisfaction of the jury.'*" (Italics supplied). See also *Commonwealth v. Barrish*, 297 Pa. 160, 146 A. 553; *Commonwealth v. Blanchard*, 345 Pa. 289, 26 A. 2d 303; *Commonwealth v. Barnak*, 357 Pa. 391, 54 A. 2d 865; and *Commonwealth v. Richardson*, 392 Pa. 528, 140 A. 2d 828. The court's charge was sufficient, and a correct statement of the law, in this respect.

The remaining contention to be considered is the court's refusal to grant a new trial on the basis of after-discovered evidence. This consisted of affidavits of two brothers, August Bertig, Jr. and Ellio Bertig, that they had talked for about ten minutes to John Turk, the victim's son, within several hours after the shooting; that he had not stated that he saw the shooting; that

he had declared "he did not believe Harry Gates would shoot his father or anyone else," and "did not believe Harry Gates would do anything like that." This does not meet the requirements of the law on after-discovered evidence. John Turk having testified that he saw defendant shoot the victim, this proposed testimony therefore served only to attack John Turk's credibility, and it " '. . . furnishes no sufficient reason for granting a new trial' ": *Commonwealth v. Elliott*, 292 Pa. 16, 24, 140 A. 537.

There is no merit in other reasons given by defendant in support of his appeal. He received a most fair and impartial trial; the charge of the court was complete; and, as we have stated, the evidence was wholly sufficient to sustain the verdict. We have carefully reviewed both the law and the evidence, as it is our duty to do, and have found all the essentials of murder in the first degree.

Judgment and sentence affirmed.

––––––

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It happens occasionally that a trial judge will be so convinced of the guilt of the accused defendant on trial before him that he charges the jury with such ease of manner and looseness of phraseology that he overlooks constitutional guarantees and legal requirements which, however, should not admit of any relaxation whatsoever, regardless of the judge's feelings in the matter. Then, when the defendant is convicted and he appeals to this Court, pointing a complaining finger at glaring lapses in the judge's charge and demands a new trial, this Court occasionally, after scanning the record, concludes that the defendant is guilty and it affirms the conviction, although the record shouts of

trial errors. And thus is much bad law incorporated into the juridical system of Pennsylvania.

One phase of the law which some trial judges have recently been treating with growing insouciance is the one which pertains to the defense of alibi. At this session of our Court, the Majority is approving convictions in two cases where the respective trial judges wore their robes so relaxedly that their utterances bore little resemblance to the tight and precise language dictated by the supreme law of the Commonwealth.

In the case here under consideration the defendant, Harry Gates, pleaded not guilty to the charge of murdering one Louis Turk in Young Township, Indiana County. In his defense, Harry Gates introduced evidence to the effect that when the killing of Louis Turk was taking place, he was four-tenths of a mile distant from the locale of the murder in a little town called McIntyre. The killing was done by a .32 S. & W. revolver which precludes the possibility that Gates could have aimed at and hit Louis Turk from a gun emplacement almost a half mile away.

In his charge to the jury, the trial judge began his discussion of the accused's defense by saying: "Now the theory of the defense is that the defendant was not there." But the defense of alibi is not a theory. It is a brute geographical fact. The defendant insisted at the trial that he could not possibly have committed the crime because he was at a place other than the place of the crime when it occurred; and he was thus entitled to have this physical evidence presented to the jury without the judge attaching to it the dangling, derogatory exhibit tag of "theory." However, standing alone, the judge's lapse in this regard would not be serious, but it did not stand alone. After characterizing the defense as a theory, the trial judge said: "An alibi is a perfect defense if you believe it." While

naturally no evidence is of consequence unless it is
believed, the judge's modification could possibly have
suggested to the jury that *he* did not believe it, espe-
cially when he immediately followed that statement
with another statement, namely, "It [the alibi] is de-
signed to prove that the defendant during the whole
of the time was away from the place where the crime
was committed." The verb *design,* when employed in
the association under discussion, could smack a little
of the concept of cunning, scheming, crafty planning,
or even fabrication.

I am aware that one could say that I am being un-
duly meticulous and that it is not fair to throw a spot-
light of meaning on individual words. A court's charge
should be taken as a whole. True. And it is, taken
as a whole, that the charge in this case reveals its woe-
ful deficiency. I here quote in its unabashed entirety
all that the trial judge had to say on the important
law of alibi: "Now the theory of the defense in this
case is that the defendant was not there; that he had
nothing to do with this shooting. We say to you that
that type of defense is known as an alibi. An alibi is
a perfect defense if you believe it. It is designed to
prove that the defendant during the whole of the time
was away from the place where the crime was com-
mitted, and that he could not have participated in it.
Evidence of this kind should be carefully scrutinized
and weighed by the jury as in all cases, which requires
frequently very great nicety as to the recollection by
witnesses of particular dates and events, of particular
hours or half hours or even minutes of the day on
which the offense to which it relates was committed.
The setting up of an alibi as a defense does not change
the burden upon the Commonwealth by the plea of not
guilty of the prisoner, or waive his right to demand
from the Commonwealth, before he can be convicted,

a full and complete proof of his guilt beyond a reasonable doubt, but where a person sets up an alibi as a defense, the burden of proving his alibi to the satisfaction of the jury is thrown upon him. If he does not do this, his defense of alibi falls completely."

It will be noted that the judge said that alibi was designed to prove that the defendant was away from the place where the crime was committed "during the whole of the time." There was no obligation on the part of the defendant to prove that he was absent from the scene of the crime "during the whole of the time." What is meant by "the whole of the time"? Does that mean that if the murder occurred in the evening, the defendant must show that he was nowhere near the scene of the crime during the entire evening? The shooting in this case occurred at 8:30 p.m. One of the defendant's witnesses said she saw the defendant at McIntyre, four-tenths of a mile away at 8:30. It was enough for Gate's defense that he prove that he was not at the Turk home, where Louis Turk met his death, when, and only when, the fatal shot was fired.

But all these observations are mere scratches on the drinking glass as against the total breakage of the pitcher containing the full content of the instruction on the law of alibi. The judge said that the defendant had to prove his alibi "to the satisfaction of the jury." What would satisfy the jury? The judge mentioned only one standard of proof in the entire charge, namely, proof beyond a reasonable doubt. In referring to proof beyond a reasonable doubt he equated it in one instance with satisfying the jury. He said: "The law says that the burden of proof of guilt of a defendant is upon the Commonwealth, and goes to the extent of requiring the Commonwealth to produce before the jury, that is this jury in this case, evidence and testimony of such a type and character *as will*

*satisfy the mind of each and every one of you people, and here is the important part, beyond a reasonable doubt* of the defendant's guilt before you would be justified in returning a verdict of guilty in any degree."[*]

Would not the jury, since no other criterion was submitted to them, conclude, when the judge said the defendant had "the burden of proving his alibi to the satisfaction of the jury" that he meant the defendant had to prove his alibi beyond a reasonable doubt? And isn't such an instruction dismally out of place in a criminal case?

The Majority makes no attempt to explain away this startling defect in the judge's charge. In fact it does not even mention the defect.

Another irreparable break in the vessel of the court's charge is the judge's failure to state that an alibi, may of itself raise a reasonable doubt which would work an acquittal. And then still another irremediable fissure in the charge is the neglect of the judge to state that the evidence of an alibi, even if not believed, may, in conjunction with the other evidence in the case, raise that reasonable doubt which would acquit the defendant.

The Majority says it is satisfied with the judge's charge on the law of alibi, but it can only register that satisfaction by ignoring the previous pronouncements of this Court on the subject. As far back as 1878, this Court said, speaking through Justice GORDON (*Turner v. Com.*, 86 Pa. 54, 73) : "Proof of an alibi is as much a traverse of the crime charged as any other defence, and *proof tending to establish it, though not clear, may, nevertheless, with other facts of the case, raise doubt enough to produce an acquittal.* We are inclined to think with Mr. Greenlead (Ev. vol. 1,

---

[*] Italics throughout, mine.

sec. 81b) that the true rule in criminal cases, notwith-standing some decisions to the contrary, is, that the burden of proof never shifts, but rests upon the prose-cution throughout, so that, in all cases, a conviction can be had only after the jury have been convinced be-yond a reasonable doubt, of the defendant's guilt. From this it results, that, *if from any, or from all the evi-dence taken together, a reasonable doubt of the de-fendant's guilt is raised, there should* be an acquittal." Of all this in the trial judge's charge there is nothing. And in this appalling omission the Majority sees noth-ing wrong.

Coming down to a more recent date, 1946, this Court said in the case of *Commonwealth v. New*, 354 Pa. 188, 213: "When a defendant sets up an alibi, it is *not* sufficient to tell the jury merely that the Com-monwealth has (quoting from the charge) 'to prove the guilt of the defendant beyond a reasonable doubt, and when the defendant sets up a defense in this case of alibi then it not only should receive your careful con-sideration but you must be satisfied by the weight of the evidence that he has made out his defense, not be-yond a reasonable doubt as far as an alibi is concerned but satisfied by the weight of the evidence or the pre-ponderance of the evidence that he was not present', but a trial judge *must also,* as we said in Com. v. Jor-dan, 328 Pa. 439, 196 A. 10, speaking through Justice STERN, fully advise the jury 'as to the difference be-tween the burden resting upon the Commonwealth to establish guilt, and that resting on the defendant with respect to the alibi set up' so that the jury may be 'fur-nished with a standard for determining the legal value of the evidence.' *The jury must also be instructed that 'the evidence in support of the alibi may, with other facts in the case, raise the reasonable doubt of guilt which entitles a defendant to acquittal.'*" Of all this

in the trial judge's charge there is nothing, and of this grievous omission the Majority sees nothing wrong.

Unless the Majority is prepared to jettison all previous law on the subject, it must be apparent that the requirements outlined in the cases here cited are not mere window dressing; they are not mere rhetorical embellishments. They constitute fundamental and irreducible elements in the charge, which cannot possibly be omitted without committing irreparable error. This Court seems satisfied to ignore its own rulings because it is convinced that the defendant is guilty, but what is to happen in future cases where the evidence may not be as convincing as the Majority believes the evidence is convincing in this case?

I fear for the future of the law on alibi in Pennsylvania. The decision of the Court in this case and the one in *Commonwealth v. Richardson,* 392 Pa. 528, also handed down today, go far to shroud the defense of alibi in such mists of ambiguity and indecisiveness that trial courts embarkng on the sea of instructions to juries will find themselves armed with an erratic compass, studying a confused map, and looking for direction from a lighthouse which casts shadows instead of illumination.

And in such a navigational farrago, a judge seeking a conviction may charge almost anything or nothing and find some color of authority for his statements or omission from the two decisions on the law of alibi proclaimed today. I disassociate myself from such awesome responsibility and accordingly dissent.