J-A14023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| JESSE HERNANDEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| INDEPENDENCE CONSTRUCTION | : | |
| CORPORATION, SOUTHEASTERN | : | |
| PENNSYLVANIA TRANSPORTATION | : | No. 1911 EDA 2023 |
| AUTHORITY, NATIONAL RAILROAD | : | |
| PASSENGER CORPORATION D/B/A | : | |
| AMTRAK | : | |

Appeal from the Judgment Entered July 14, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 181202689

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

CONCURRING/DISSENTING MEMORANDUM BY STABILE, J.:

**FILED AUGUST 18, 2025**

Respectfully, I would grant Independence Construction Corporation (ICC) a new trial due to the highly prejudicial nature of the irrelevant evidence admitted. I believe the Majority's finding of ICC's waiver as to Issues Six, Seven, and Eight is in error because the record reflects that ICC thoroughly preserved those claims as a matter of fact and of law. More concerning, however, is that the Majority's finding of waiver represents a disturbing and possibly growing trend within this Court of avoiding merits consideration of issues based on hyper technical waiver grounds. This trend does not honor

our duty to liberally construe our rules and does violence to every citizen's constitutional right to appeal.[1]

The present case is a negligence action wherein Jesse Hernandez alleged safety violations by ICC that caused him harm. Over ICC's objections, Hernandez was permitted to attack the character of ICC's owner, Steven Hare, by asking him about ICC's supposed breaches of the Business Integrity and Disadvantaged Business Enterprise (DBE) requirements of its SEPTA contract. This questioning related to completely irrelevant and prejudicial matters that had nothing to do with establishing negligence, but rather, prevented ICC from receiving a fair trial. It is clear from a record review that the only purpose served by the introduction of this irrelevant testimony was to besmirch ICC's character in the eyes of the jury.

Accordingly, I dissent in part for three main reasons. *First*, contrary to the Majority's waiver argument, which it raises *sua* sponte, the record clearly shows that ICC fully litigated the evidentiary issues asserted in Issues Six, Seven, and Eight of its brief. *See* Appellant's Brief, at 2-4 (statement of questions involved). It was clear from context that ICC preserved the issues at trial by objecting to the content of the disputed evidence, as well as its form, which would directly implicate the rules cited by ICC on appeal – Pa.R.E.

_____

[1] Pennsylvania Rule of Appellate Procedure 105(a) provides that "[t]hese rules shall be liberally applied to secure the just, speedy, and inexpensive determination of every matter to which they are applicable." Pa.R.A.P. 105(a). The right to an appeal is guaranteed by Article 5, section 9 of the Pennsylvania Constitution. *See* Pa. Const. art. 5, § 9.

401, Pa.R.E. 403, and Pa.R.E. 608(b)(1) – as implicitly recognized by the trial court and Hernandez. *Second*, even assuming that ICC's arguments below were strictly limited to relevance, this would have been sufficient to preserve a claim under Rule 608(b)(1),[2] which merely codified a long line of cases holding that specific instances of collateral misconduct are not probative of a witness's character for truthfulness. *Third*, ICC's preservation of these evidentiary claims requires this Court to consider their merits, and in light of the evidence's obvious prejudicial effect, ICC should receive a new trial.

### I. The Claims Were Preserved

Generally, in order to preserve an issue for purposes of appellate review, a party must make a timely, contemporaneous objection at a point when the trial court may correct the asserted error. **See** Pa.R.E. 103. The party must also state the "specific ground" of the objection, "unless it was apparent from the context[.]" **Id**. "Once the court rules definitively on the record — either before or at trial — a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Pa.R.E. 103(b).

"Even a general objection is adequate to preserve a challenge to an evidentiary ruling where the evidence is inadmissible for any purpose[.]" **Commonwealth v. Vucich**, 194 A.3d 1103, 1107 (Pa. Super. 2018) (quoting

---

[2] The rule provides that "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct[.]" Pa.R.E. 608(b)(1).

*Cominsky v. Donovan*, 846 A.2d 1256, 1258 n.2 (Pa. Super. 2004)). The Rules of Appellate Procedure, including those governing the preservation of issues for appeal, must be liberally construed. *See* Pa.R.A.P. 105(a). Consistent with that liberal approach, "[e]ach error identified in [a Rule 1925(b)] Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v).

"This Court may raise the issue of waiver *sua sponte*." *In re Estate of Anderson*, 317 A.3d 997, 1003 (Pa. Super. 2024). Crucially, though, when this Court raises an issue *sua sponte* to affirm a trial court's evidentiary ruling for a reason other than those given by the trial court, the basis of that holding should be "apparent from the record." *Commonwealth v. Edwards*, 903 A.2d 1139, 1157 n.19 (Pa. 2006); *see also Lynn v. Nationwide Ins. Co.*, 70 A.3d 814 (Pa. Super. 2013) (same).

The Majority's stated reason for finding waiver is that ICC only objected on relevance grounds (relating to Pa.R.E. 401), without specifically referencing any of the other rules relied upon in its appellate brief, namely Pa.R.E. 403 and Pa.R.E. 608(b)(1). *See* Maj. Mem., at 26-27. However, the record shows that the substance of all those rules was fleshed out below in ICC's arguments, fully apprising the trial court of the same issues now being raised on appeal. As discussed above, so long as the basis for an objection is understood, issue preservation does not require the numerical nomenclature of an evidentiary rule to be stated. *See* Pa.R.E. 103(a)(1)(B).

- 4 -

Prior to trial, ICC moved to preclude Hernandez's expert, Gustavo Da Silva, from discussing ICC's performance of its SEPTA contract. As is evident from the pretrial disclosure of Da Silva's expert reports, Hernandez had planned to have him opine on whether ICC breached contractually required safety protocols. ICC argued in its motion *limine* that the subject was not relevant to any of Hernandez's negligence claims, or to any of the issues to be resolved by the jury. **See** ICC's Motion *In Limine* Seeking Preclusion of Testimony by Gustavo Da Silva on Issues of Contract and/or Breach of Contract Between Defendants, 1/19/2023, at paras. 31-37. ICC contended in its motion that any testimony regarding the contractual relationship of the defendants would be inadmissible due to its complete irrelevance, as well as the potential for such evidence to confuse the jury about the nature of the proceedings. **See id**. (citing Pa.R.E. 401, 403).

The trial court agreed, and granted ICC's motion. The parties conducted no other discovery pertaining to the contractual obligations between ICC and SEPTA, and Hernandez gave no indication that he would seek to elicit such evidence at trial through the testimony of another witness.[3]

---

[3] It is specious to suggest that ICC's motion *in limine* to preclude testimony about its contract with SEPTA was limited to Da Silva. **See** Maj. Mem., at 26-27. ICC's arguments chiefly had to do with the content of the prospective testimony, not the identity of the witness who was testifying. ICC was compelled to refer specifically to Da Silva's testimony in its motion because he was the only witness who Hernandez planned to question about ICC's contract with SEPTA.

Later, during Hare's cross-examination, Hernandez broached the subject of ICC's compliance with the DBE requirements of its SEPTA contract. These contractual terms prohibited ICC from subcontracting its work to an entity owned by ICC (Hare); the contract also required ICC to subcontract at least 14% of the total value of the contract to a DBE. It was insinuated by Hernandez that Hare had purchased the company, MSI (Minority Services, Inc.), and not changed its name, as a ploy to qualify the company as a DBE. *See* N.T. Trial, 2/14/2023 (p.m. session), at 79 ("Sir, is the reason you kept the name Minority Services, Inc. because you wanted to imply to SEPTA that you actually operated a DBE when it was, in fact, a company owned by you?").[4]

Echoing its motion *in limine*, ICC objected that such matters were irrelevant and collateral to the negligence claims asserted in Hernandez's complaint. Hernandez countered that if Hare, as ICC's owner, breached those parts of the SEPTA contract, it would be relevant to his truthfulness and credibility. *See* N.T. Trial, 2/14/2023 (p.m. session), at 32-34.

_____

[4] In his testimony, Hare admitted that since he is a Caucasian man, MSI did not fit the definition of a DBE, which requires the entity to be owned by a woman or a member of a racial minority. Hare explained that he had purchased MSI from a Black woman, and he feared that changing the name would complicate the entity's existing contracts with other parties. As to the DBE requirements, Hare claimed that he satisfied those terms by retaining administrative support from the DBE entity, Rhoads Business Services. He claimed further that SEPTA knew of his ownership of MSI, as well as his race and gender. Hare's explanations were neither corroborated nor refuted, as there had been no pretrial discovery about these collateral issues.

In a sidebar, the trial court responded that since ICC's potential non-compliance with the SEPTA contract could bear on Hare's credibility, such matters were necessarily relevant and admissible at trial. *Id.*, at 34-35. ICC disputed that notion, arguing that ICC's performance of terms in its SEPTA contract had no relevance to its alleged liability for the injuries sustained by Hernandez.

The trial court and ICC's counsel then went beyond the discrete issue of relevance to discuss the proper means by which the credibility or character of a witness could be attacked. ICC's counsel began developing the point that a witness could not be questioned about a collateral instance of misconduct and then confronted with evidence inconsistent with the witness's answers. *Id.*, at 35-36. Before ICC's counsel could complete the argument, the trial court cut short the discussion and definitively overruled ICC's objection:

> ICC Counsel: Again, Your Honor, so, you know, we could go through all sorts of provisions of the contract that maybe he didn't have, you know, abide by or things of that nature, but what does that have to do with the accident in question? And, again, this is a negligence –
>
> Trial Court: Credibility is always an issue when a witness is testifying. If you could show that a witness was not being truthful or was not credible when he did certain things in relation to the overall case, that's relevant as to his whether or not the jury is going to believe other things that he said.
>
> ICC Counsel: Yeah, but it has to be relevant to what we are talking about. This is not a breach of contract case.
>
> Trial Court: No, no, credibility is always an issue in a case when a witness is testifying. Right?

ICC Counsel: I mean --

Trial Court: I mean, just, for example, if -- and this is not the case and I'm not trying to say it is the case. But if this individual had committed a crime that would involve *crimen falsi*, and he was sentenced to more than a year or pled guilty or whatever like that, even though it's not relevant to the case, it goes to his credibility, that's why it's allowed.

ICC Counsel: And there is a specific rule on that.

Trial Court: The reason it is, because when a witness testifies the jury has to believe what he's saying. And if they could show that he was not credible at a certain point, then that will go to his credibility. And I'm going to allow the question.

ICC Counsel: **Here's another scenario, Your Honor. Ask the question, did you ever get a speeding ticket, sorry, did you ever get a speeding ticket and the answer --**

Trial Court: That doesn't involve honesty, it's got to be a *crimen falsi*.

**ICC Counsel: Then he answers no --**

Trial Court: If it did, I would be the most dishonest person --

ICC Counsel: **But then he answers no and they pull up a speeding ticket that he got. So that's where we're going. We're going way afar with this credibility issue, which is --**

Trial Court: **No, it's not way afar, it's in the contract. I'm going to allow it. The objection is overruled**.

*Id*., at 34-36 (emphasis added).

Later in Hare's cross-examination, when Hernandez's counsel questioned him as to whether ICC had subcontracted to a DBE, and paid it the "set aside portion" of the contract's total value, as required by the SEPTA contract, ICC's counsel again objected:

- 8 -

ICC Counsel: And that's my problem when we had the last [sidebar] session in here. We are now getting into a contract dispute that has nothing to do with this case. Nothing at all, Your Honor. **And to try to interject the price of this contract into this case is so prejudicial, has no probative value whatsoever**.

* * * *

**[W]e are going -- we are so far away from a train accident at this point in time, <u>the jury is going to go: What are we doing? Are we doing a breach of contract trial or are we doing a negligence trial?</u>**

* * * *

And, again, Your Honor, we are getting far afield of anything -- credibility must be relevant to the case at hand. **You just can't ask him again, you know, questions about, you know, isn't it true you beat your wife? I mean that's where we're going on this.**

*Id*., at 45-48 (emphasis added).

By this point of the trial, neither Hernandez, nor the trial court, had cited Pa.R.E. 608 as authority allowing the proposed cross-examination of Hare. The trial court referred to Pa.R.E. 608 explicitly for the first time in its 1925(a) opinion, in a token attempt to clarify its reasons for permitting Hare to be questioned about ICC's alleged breaches of the SEPTA contract. *See* Trial Court 1925(a) Opinion, 12/19/2023, at 19-21. By doing so, the trial court itself implicitly recognized that ICC had previously identified issues associated with that rule when lodging its contemporaneous objections. *See id*.

Further, at the appellate stage, neither the trial court, nor Hernandez, have asserted, as the Majority does, *sua sponte*, that ICC waived the subject

- 9 -

evidentiary claims in its brief.[5]   This only further establishes that ICC's purported waiver is not apparent from the record, and that its preservation of the subject claims was entirely clear from context. ***See e.g., Cominsky v. Donovan***, 846 A.2d 1256, 1258 n.2 (Pa. Super. 2004) ("[T]he trial judge decided the issue on its merits, raising no question in his opinion that it had not been preserved or that he did not understand the basis for the objection. In addition, appellee does not argue to this Court that the issue was waived. Under these circumstances, the general objection was sufficient to preserve the issue for our review."); ***see also Commonwealth v. Wolfel***, 233 A.3d 784, 789-90 (Pa. 2020) (holding that Commonwealth had waived its waiver argument against defendant at trial and on appeal, precluding Superior Court from raising waiver *sua sponte* to avoid review of the appeal's merits).

On appeal, ICC then reiterated its contention that the trial court erred in allowing Hernandez to question Hare about the Business Integrity and DBE

---

[5] Again, neither the trial court, nor Hernandez, have asserted that ICC waived its evidentiary claims on the grounds stated by the Majority here on appeal for the first time.  Hernandez only has argued in his brief that ICC waived the right to challenge his right to impeach Hare based on purported violations of the SEPTA contract because ICC did not object when the DBE and business integrity provisions were admitted into evidence as exhibits.  **See** Appellee's Brief, at 57-59.  This separate waiver argument is unpersuasive.  ICC timely objected when Hernandez sought to discredit Hare based on whether ICC violated those provisions.  ICC in no way agreed to have Hare questioned about the contents of the exhibits, and the alleged breaches of the SEPTA contract, simply by opting not to challenge the exhibits' admissibility.  Hare's alleged breaches of the contractual terms were not relevant to any trial issues, and ICC had no way of knowing that Hernandez had planned to use the exhibits to impeach Hare or attack his credibility.

provisions of the SEPTA contract. ICC summarized the trial court's error in its 1925(b) statement, noting that "[t]he examination bore no probative value to any material fact in dispute." Appellant's 1925(b) Statement, 8/4/2023, at para. 10. This identified error must be "deemed to include every subsidiary issue that was raised in the trial court," *see* Pa.R.A.P. 1925(b)(4)(v), namely that relevance is a threshold requirement for attacking the credibility of a witness on cross-examination with specific instances of the witness' conduct.

In its brief, ICC has argued that the admission of evidence that it breached the Business Integrity and DBE provisions of the contract was irrelevant, inflammatory, and prejudicial due to the likelihood that the jury could have been confused or misled about the nature of the issues it was tasked with resolving. *See* Appellant's Brief, at 36-45. Moreover, ICC has argued that, insofar as the trial court found ICC's performance of the subject contract terms to be "character evidence" under Pa.R.E. 608, and therefore "always" admissible, the trial court misapplied the law. *See id*., at 41.

That is, the cross-examination on these subjects did not constitute "reputation" evidence under Pa.R.E. 608(a) as the trial court stated in its 1925(a) opinion, and specific instances of misconduct could not be used to impeach a witness on cross-examination under Pa.R.E. 608(b)(1). *See id*., at 41-42. ICC cited several cases which held that the admissibility of character evidence under Pa.R.E. 607 and Pa.R.E. 608 is subject to the threshold

relevance requirements of Pa.R.E. 401, as well as the balancing test of Pa.R.E. 403. *See id*., at 42-43.[6]

As shown in the above excerpts of the notes of testimony, there is no question that ICC's counsel thoroughly argued to the trial court that Hare's purported breaches of its SEPTA contract were irrelevant and inadmissible, and that the admission of such evidence was prejudicial due to its potential to mislead or confuse the jury (implicating Pa.R.E. 401 and Pa.R.E. 403). Further, it is readily apparent that ICC's counsel and the trial court were debating whether Hare could be confronted with specific instances of prior conduct that were collateral to the issues involved in the trial (implicating Pa.R.E. 608(b)(1)). *See id*., at 35-36; 45-48.[7]

_____

[6] In its brief, ICC cites several cases which stand for the proposition that when evidence is not relevant to bias but instead merely truthfulness, it is collateral and not probable with extrinsic evidence. *See* Appellant's Brief, at 42-43 (citing *Commonwealth v. Kiger*, No. 343 MDA 2019 *8 (Pa. Super. filed December 2, 2019) (unpublished memorandum)). Further, a party "may not impeach a witness on collateral matters or matters that have no relationship to the case at trial." *Id*. (quoting *Commonwealth v. Guilford*, 861 A.2d 365, 369 (Pa. Super. 2004)). This is exactly what ICC argued to the trial court. *See* N.T. Trial, 2/14/2023 (p.m. session), at 32-48.

[7] The Majority suggests that ICC's prejudice argument was limited to Hernandez's cross-examination of Hare about the value of the ICC-SEPTA contract, and not about violations of the business integrity and DBE provisions. *See* Maj. Mem., at 27 n.16. This is incorrect. Hernandez sought to elicit the total value of the contract so that he could establish ICC's breach of the requirement to pay a subcontracted DBE business at least 14% of that value. ICC's prejudice argument as to the contract amount went directly to the *entire* line of questioning about alleged breaches of the DBE provisions. Additionally, it is not even necessary for a party to argue prejudice as a basis for excluding
*(Footnote Continued Next Page)*

The trial court disregarded the points made by ICC's counsel, presuming that Hare's responses to Hernandez's questions about ICC's performance of the SEPTA contract would be proper merely because they could be used to discredit Hare. ICC's counsel tried to alert the trial court to an error in that rationale by giving hypothetical examples of improper character attacks on a witness with collateral matters. Those examples illustrated exactly what Pa.R.E. 608(b)(1) prohibits, apprising the trial court of the content of the rule, even if it was not identified by name. *See id*. Apart from expressly citing Pa.R.E. 608(b)(1), which ICC was not required to do in order to preserve its appellate issues, ICC could not have done anything more to apprise the trial court of the basis for its objections.

### II. ICC's Relevance Objections Directly Implicated Rule 608(b)(1)

Finally, even if the Majority is correct that ICC's objections to Hare's cross-examination were strictly based on relevance, our decisional law would *still* compel merits consideration of the issue under Pa.R.E. 608(b)(1).

This Court has recognized that the promulgation of Rule 608(b) (effective on October 1, 1998) did not implement a new evidentiary test for admissibility. *See Eighth N.-Val, Inc. v. William L. Parkinson, D.D.S., P.C., Pension Tr.*, 773 A.2d 1248, 1252 (Pa. Super. 2001) (commenting that

_____

evidence when the threshold test of relevance has not been met. *See Commonwealth v. Story*, 383 A.2d 155, 160 (Pa. 1978).

Rule 608 "codifies what has long been the law regarding the use of specific instances of misconduct to attack a witness's character for truthfulness: specific instances of misconduct are not admissible."). Subsection 608(b)(1) of the rule was simply intended to codify decades of Pennsylvania's decisional law which prohibited – on **relevance** grounds – the cross-examination of a witness with specific instances of collateral conduct. **See generally Downey v. Weston**, 301 A.2d 635, 639 (Pa. 1973).

A quarter century before Rule 608 went into effect, in **Downey**, our Supreme Court considered the restriction on a plaintiff's intended line of questioning for a defendant's expert causation witness, a physician. **See id**. The plaintiff was injured in a car accident, and he alleged that the other drivers involved, the defendants, had caused his injuries due to their negligence. The plaintiff sought to cross-examine a defendant's causation expert about his purported violations of the Hippocratic Oath and the Principles of Medical Ethics of the American Medical Association. **See id**., at 638. On review of the order precluding those questions, the Court held that evidence of the ethical breaches was inadmissible because it did not "bear[] directly on the witness' character for truth" or otherwise have any probative value in the case:

> It is true that evidence of Some misconduct or Some past events throwing light on human character is admissible on cross-examination, but this is restricted to evidence which bears directly on the witness' 'character for truth'. 3A Wigmore, Evidence s 922, at 726 (Chadbourn rev. 1970). **Thus we have held _inadmissible_ as being _irrelevant_** to establishing a witness' credibility the fact that he operated an illegal bar and quarreled with his spouse, **Commonwealth v. Gates**, 392 Pa. 557, 141

- 14 -

A.2d 219 (1958); the fact that he drove an auto recklessly, ***Gregg v. Fisher***, 377 Pa. 445, 105 A.2d 105 (1954); the fact that he had been convicted of assault and battery, ***Commonwealth v. Kostan***, 349 Pa. 560, 37 A.2d 606 (1944); the fact that he had once been a panderer, ***McIntosh v. Pittsburgh Railways Co.***, 432 Pa. 123, 247 A.2d 467 (1968). ***<u>Similarly, the connection between an alleged breach of a canon of medical ethics and the credibility of the physician on the witness stand is tenuous at most. Its further pursuit here would have been to engage in a collateral inquiry of dubious relevance</u>***. We are satisfied that the trial court committed neither abuse of discretion nor error of law in closing this line of inquiry.

***Downey***, 301 A.2d at 639 (emphasis added).

By the same token, numerous controlling decisions have limited the ability of a party to attack a witness' character for truthfulness by making the admissibility of specific instances of conduct contingent on whether they directly related to a trial issue. ***See e.g., Commonwealth v. Checca***, 491 A.2d 1358, 1365 (Pa. 1985) ("A witness' credibility cannot be attacked on the basis of prior conduct which is ***unrelated to the issues at the present trial***.") (Emphasis added); ***Brinich v. Jencka***, 757 A.2d 388, 396 (Pa. Super. 2000) ("Brinich's use of his uncle's credit information and other alleged unspecified ***acts of past business misconduct, even if true, are not relevant to*** [trial issue of] whether Brinich intended to finish construction on the Jencka home."); ***Walley v. Iraca***, 520 A.2d 886, 890 (Pa. Super. 1987) (citing ***McGoldrick v. Penn. R. Co.,*** 241 A.2d 90, 92 (Pa. 1968)) ("This, of course, does not permit the impeachment of a witness on collateral matters; the grounds for contradicting a witness ***must be germane to the issues at trial***.") (Emphasis added); ***Commonwealth v. McGuire***, 448 A.2d 609, 612

(Pa. Super. 1982) (quoting **Commonwealth v. Morrison**, 43 A.2d 400, 401 (Pa. Super. 1945)) ("[T]he credibility of a witness may not be assailed by questions which develop instances of misconduct **unrelated to the issue on trial**.") (Emphasis added).

In sum, Rule 608 is merely a formal adoption of court holdings which prohibit the use of specific instances of misconduct to attack a witness's character for truthfulness on cross-examination. **See Eighth N.-Val, Inc.**, 773 A.2d at 1252. This judicial prohibition always was rooted in the legal theory of relevance. **See e.g., Downey**, 301 A.2d at 639; **McGoldrick**, 241 A.2d at 92. The fact that those holdings were codified in a rule does not, as the Majority seems to suggest, require a party to specifically cite the rule in order for those decisions, or the rule, to have controlling effect.

When ICC's counsel repeatedly stressed to the trial court that any cross-examination of Hare had to be germane to, or be probative of, a trial issue, that legal theory was in lockstep with the above line of cases, which are in turn the reason why Rule 608(b)(1) exists in the first place. The Majority's finding of waiver cannot be squared with the record; nor is the Majority's understanding of Rule 608(b)(1) consistent with decades of caselaw in which specific instances of collateral conduct were held to be inadmissible on relevance grounds. The Majority therefore has split with those controlling authorities, and further review may be warranted so that this new conflict in our decisional law can be reconciled.

### III. The Cross-Examination of Hare was Prejudicial

Turning to the merits of ICC's claims, I agree with ICC that the trial court erred in allowing Hernandez to attack Hare's character for truthfulness on cross-examination with specific instances of alleged breaches of contract.

Only relevant evidence is admissible at trial. *See* Pa.R.E. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence[.]" *See* Pa.R.E. 401. But even relevant evidence must be excluded "if its probative value is outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Where the evidence in question has no relevance to a trial issue, it is "unnecessary for the trial court to determine whether the probativeness outweighed the prejudice." *Commonwealth v. Story*, 383 A.2d 155, 160 (Pa. 1978).

The credibility of a witness may be "impeached by any evidence relevant to that issue, except as otherwise provided by statute or [the Rules of Evidence,]" such as Rules 403, 608, 609, and 610. Pa.R.E. 607(b). As discussed above, Rule 608(b)(1) is essentially a rule of relevance, having codified decisional law which relied upon relevance principles to limit attacks on "the character of a witness for truthfulness[]." Pa.R.E. 608(b)(1). Under that rule, as well as the numerous cases it was predicated on, a witness' character for truthfulness may not be attacked "by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct" when

- 17 -

such collateral conduct has no probative value.  *Id*.; *see also Downey*, 301 A.2d at 639.

Here, whether ICC breached the business integrity and DBE provisions of its contract with SEPTA was not at all probative of any of the claims or defenses asserted by the parties.  It is also highly dubious whether the alleged contractual breaches were relevant to Hare's character for truthfulness.  *See e.g., Downey*, 301 A.2d at 639.  If Hare, through ICC, indeed breached contractual duties owed to SEPTA, such conduct would have no discernable bearing on whether ICC, SEPTA, or another party was negligent in maintaining the worksite where Hernandez was injured.  The irrelevance of the ICC-SEPTA contract makes it unnecessary to consider, for admissibility purposes, whether evidence of ICC's non-compliance was outweighed by its prejudicial effect under Rule 403.  Thus, the trial court clearly erred in allowing Hernandez to cross-examine Hare on ICC's performance of its SEPTA contracts.

"Questions regarding the admission or exclusion of evidence are subject to an abuse of discretion standard of review."  *Braun v. Target Corp.*, 983 A.2d 752, 760 (Pa. Super. 2009).  A new trial is necessary to remedy the erroneous admission of evidence when it has caused a party prejudice.  *See id*.  Prejudice has been described in this context as having "a tendency to suggest a [jury] decision on an improper basis."  *Id*. (quoting *Whyte v. Robinson*, 617 A.2d 380, 382 (Pa. Super. 1992)).

In this case, ICC was prejudiced severely by the admission of the subject evidence. The cross-examination of Hare became an impromptu mini-trial on a subject entirely collateral to the allegations of ICC's negligence. The apparent strategy of Hernandez's counsel had little to do with impeaching Hare with inconsistent statements or the like; it was more an attempt to equate allegedly unethical conduct with negligent conduct.

Hernandez's counsel drove the point home in closing by arguing that ICC should be found liable because it (through its owner, Hare) had a propensity to break "promises after promise." *See* N.T. Trial, 2/21/2023, (a.m. session), at 39-40. That is, ICC was more likely to be negligent in keeping its worksites safe because Hare had demonstrated through his conduct with SEPTA that he was an unscrupulous person:

> Mr. Hare made all of these promises. [ICC] made all of these promises. SEPTA made a promise to pay them. They did that. Mr. Hare never said, you shouldn't pay us, we're not actually doing this. He took and said–what he did do, he actually subbed it out to his company, [MSI] which violated the contract, because he wasn't allowed to sub it to people that he actually had a financial interest in. They broke promise after promise.

> \* \* \* \*

> They failed to have a single ICC worker on site. Remember, he subbed it all out to his own company that he owned. They improperly subbed it to [MSI].

*Id*., at 41-46.

As a result, the jury could easily have confused Hare's questionable business practices with the issue of ICC's liability for negligence. The evidence of Hare's alleged failure to meet his contractual obligations under the DBE

provisions of the SEPTA contract, and Hare's ownership of MSI, also potentially influenced the jury to base the verdict on its animus toward Hare rather than on the evidence of ICC's liability in tort for the injuries that Hernandez sustained.

Thus, for the reasons stated above, I must respectfully dissent from the Majority's decision as to Issues Six, Seven, and Eight. Instead, I would find prejudicial error in the admission of the objected to testimony and grant ICC a new trial. In all other respects, I concur with the Majority's decision.